UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PHILLIP DIPINTO,

                Plaintiff,

-against-

WESTCHESTER COUNTY,
THOMAS LAURO, individually and in his official capacity,
and
JEFFREY BRYANT, individually and in his official capacity,

                Defendants.

------------------------------------------------------------------X

Case No.: 1:18-cv-793

**COMPLAINT**
**Plaintiff Demands a Trial by Jury**

Plaintiff, PHILLIP DIPINTO (hereinafter also referred to as "Plaintiff"), through his counsel, Derek Smith Law Group, PLLC, hereby complains of the Defendants WESTCHESTER COUNTY (hereinafter also referred to as "COUNTY"), THOMAS LAURO (hereinafter also referred to as "LAURO"), and JEFFREY BRYANT (hereinafter also referred to as "BRYANT"), as follows:

## PRELIMINARY STATEMENT

1. This action arises out of the unlawful disability discrimination of Defendants COUNTY, Commissioner LAURO, and Superintendent BRYANT. In 2016, Plaintiff DIPINTO injured his feet, which lead to him developing a limp and permanent disability in both feet.

2. Soon after Defendant BRYANT, learned of Plaintiff DIPINTO's injury, he threatened that his job would "**BE IN JEOPARDY**" if Plaintiff took legal action.

3. In the weeks the followed, Defendant BRYANT abruptly increased his scrutiny of Plaintiff DIPINTO. After Plaintiff complained to Defendant LAURO and requested a transfer away from Defendant BRYANT, Defendant BRYANT's unlawful conduct grew worse.

4. Defendant BRYANT continued to verbally threaten Plaintiff DIPINTO's job security and physically punished Plaintiff DIPINTO, causing Plaintiff DIPINTO anxiety, humiliation, and emotional distress.

5. Defendant BRYANT would intimidate Plaintiff DIPINTO, intending to dissuade him from making further complaints, requesting reasonable accommodations, and asserting his legal rights. For instance, Defendant BRYANT told Plaintiff DIPINTO, **"DON'T MAKE A BIG DEAL ABOUT THIS. IF YOU FILE A COMPLAINT YOUR JOB WILL BE IN JEOPARDY,"** and **"REMEMBER YOU'RE STILL ON PROBATION, THE COUNTY LOOKS DOWN ON THINGS LIKE THIS,"**

6. Defendant BRYANT would also tell other supervisors that Plaintiff DIPINTO needed **"TO WORK HARDER," "PHIL IS USELESS, I'M GOING TO MAKE HIS LIFE HELL UNTIL HE QUITS,"** and direct supervisors to **"BE HARDER ON [PLAINTIFF]."**

7. During this time, intending to break Plaintiff and as a form of punishment, Defendant BRYANT singled out Plaintiff to work the plants most physically demanding rotation, which caused Plaintiff great pain and aggravated his disability.

8. Defendant LAURO knew of Plaintiff DIPINTO's requests to transfer out of his current facility, and away from the unlawful scrutiny and retaliatory acts of Defendant BRYANT. Yet Defendant LAURO failed to transfer Plaintiff DIPINTO into a position where his disability could be accounted for, and he felt protected, or take any action against Defendant BRYANT.

9. Other supervisors of Defendant COUNTY knew of Defendant BRYANT's retaliation towards Plaintiff and knew of Plaintiff's requests for reasonable accommodation, but such supervisors failed to act on either account.

10. After months of working in the hostile work environment, Defendant BRYANT ultimately terminated Plaintiff DIPINTO.

## NATURE OF CASE

11. Plaintiff DIPINTO complains pursuant to the Americans with Disabilities Act of 1990 ("ADA") as amended, the laws of the State of New York, injunctive relief and damages to redress the injuries Plaintiff DIPINTO has suffered as a result of being discriminated against and retaliated against by Plaintiff DIPINTO's former employer, COUNTY, and COUNTY's supervisors, LAURO and BRYANT, on the basis of disability and/or perceived disability, hostile work environment, and wrongful termination.

## JURISDICTION AND VENUE

12. This Court has jurisdiction based on 28 U.S.C §§ 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

13. Venue is proper in this district pursuant to 20 U.S.C. §1391(b) because Defendants are located in this judicial district, and a substantial part of the events which give rise to the claims herein occurred in this district.

14. On or around January 12, 2017, Plaintiff DIPINTO dual filed his charge with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC"), Case number 10185782 and Federal Charge number 16-GB-701158.

15. The New York State Division of Human Rights investigated the claims described in Plaintiff DIPINTO's verified complaint, finding "**PROBABLE CAUSE EXISTED TO BELIEVE THAT RESPONDENT HAD ENGAGED IN UNLAWFUL DISCRIMINATORY PRACTICES.**" And, because of this finding, the Division referred Plaintiff's case to a public hearing.

16. On or around August 7, 2017, Plaintiff DIPINTO requested an administrative convenience dismissal from that the New York State Division of Human Rights.

17. On or around September 11, 2017, the New York State Division of Human Rights granted Plaintiff DIPINTO's above request.

18. On or around December 1, 2017, Plaintiff DIPINTO received the EEOC's Right to Sue Letter in reference to his EEOC charge.

19. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the EEOC's Right to Sue Letter.

## PARTIES

20. At all times material, Plaintiff DIPINTO is an individual male who is a citizen of the State of New York and resides in the Dutchess County.

21. At all times material, Defendant COUNTY, is a charter county and municipal corporation in the state of New York, which operates the Yonkers Joint Wastewater Treatment Plant in Westchester County.

22. At all times material, Defendant BRYANT is an individual man who, upon information and belief, is a resident of the State of New York and resides in the County of Westchester.

23. At the time of Plaintiff DIPINTO's employment, Defendant COUNTY employed Defendant BRYANT as the Plant Superintendent of the Yonkers Joint Wastewater Treatment Plant.

24. At all times material, Defendant LAURO is an individual man who, upon information and belief, is a resident of the State of New York and resides in the County of Westchester.

25. At all times material, Defendant LAURO was the Commissioner for County Defendant.

26. At all times material, Defendant BRYANT and Defendant LAURO held supervisory authority over Plaintiff with regard to his employment, including the power to hire, fire, and transfer Plaintiff.

27. The above-named Defendants COUNTY, BRYANT and LAURO are hereinafter referred to collectively as "Defendants."

## STATUTORY SCHEME

28. The Americans with Disabilities Act, 42 U.S. Code § 12111 (2) states a **"Covered Entity"** includes "an employer, employment agency, labor organization, or joint labor-management committee."

29. 42 U.S. Code § 12102 (1) defines the term **"Disability"** to mean, "with respect to an individual— (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))."

30. 42 U.S. Code § 12102 (3) explains what is considered **"being regarded as having such an impairment"**:

> For purposes of paragraph (1)(C): (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. (B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

31. 42 U.S. Code § 12102 (2)(A) defines **"Major Life Activities"** to include, but not be limited to: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."

32. Regarding the Americans with Disabilities Act, 29 CFR 1630.2 (1)(o) explains the term **"Reasonable Accommodations"** stating:

> (1) The term reasonable accommodation means:
> (i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or

5

    (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or

    (iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

  (2) Reasonable accommodation may include but is not limited to:

    (i) Making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

    (ii) Job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.

33. Together, 42 U.S. Code § 12102, 12111, and 29 CFR § 1630.2 establish an employer's duty with respect its employees with a disability and employees that are regarded as having such an impairment.

## STATEMENT OF FACTS

34. On or about October 20, 2014, Defendant COUNTY hired Plaintiff DIPINTO as a temporary employee working as a Wastewater Treatment Operator. As a temporary employee, Plaintiff initially had "no status."

35. On or about September 14, 2015, Defendant COUNTY hired Plaintiff DIPINTO as a probationary employee working as a Wastewater Treatment Operator.

36. As a Wastewater Treatment Operator, it was mandatory that Plaintiff DIPINTO complete a 52-week probationary period in order to qualify as a full-time employee of Defendant COUNTY.

37. Plaintiff DIPINTO's initial supervisors were KEITH MAY (hereinafter referred to as "MAY"), BEN ROGERS (hereinafter referred to as "ROGERS") and ANDREW WOZNIAK (hereinafter referred to as "WOZNIAK").

38. On or about February 5, 2016, Plaintiff DIPINTO sustained an injury on the job when an angle iron fell on his feet and ankles, severely bruising several bones of in his right foot and causing a contusion to the left foot.

39. This injury became a permanent condition, as Plaintiff DIPINTO thereafter walked with a limp because his right foot suffered 20 percent permanent loss of use and his left foot suffered 10 percent permanent loss of use.

40. Plaintiff DIPINTO's above condition substantially limited major life activities, such as walking.

41. In the alternative, Plaintiff DIPINTO's resulting limp was an obvious and perceived disability.

42. Immediately after Plaintiff DIPINTO was injured, he filed an accident report with his Defendant COUNTY's Supervisor, DAVE SCARLATO (hereinafter referred to as "SCARLATO").

43. Later that same day, upon learning that Plaintiff DIPINTO reported his injury to Supervisor SCARLATO, Defendant BRYANT called Plaintiff into his office.

44. In Defendant BRYANT's office, Defendant BRYANT then demanded that Plaintiff DIPINTO stand next to his desk so that Defendant BRYANT could inspect Plaintiff's injury.

45. After inspecting the injury, Defendant BRYANT told Plaintiff DIPINTO, **"IF YOU ARE TOO INJURED TO WORK, MAYBE YOU ARE NOT CUT OUT TO WORK HERE."**

46. During that same conversation, Defendant BRYANT threatened Plaintiff DIPINTO's employment by saying, **"DON'T FILL OUT A WORKERS COMPENSATION CLAIM! IF YOU DO, YOUR EMPLOYMENT WILL BE IN JEOPARDY."**

47. It immediately became clear that Defendant BRYANT intended to terminate and retaliate against Plaintiff if he asserted any of his legal rights, including his rights under the ADA to request a reasonable accommodation.

48. Based on Defendant BRYANT's threats and knowledge of Defendant BRYANT's previous retaliation against subordinates, Plaintiff DIPINTO did not file any claims for disability discrimination, retaliation, reasonable accommodations, or for disability leave.

49. At the time of this injury, Defendant COUNTY employed Plaintiff DIPINTO for 16 months and he had completed five months of his mandatory probationary period.

50. At all times material before this injury, Plaintiff DIPINTO never received any performance complaints or write-ups.

51. At all times material after this injury, Plaintiff DIPINTO was a qualified individual with a disability.

52. On or about February 6, 2016, the day after Plaintiff DIPINTO's injury, he did not return to work as he coincidently had a previously-scheduled two-week vacation.

53. On or about February 22, 2016, Plaintiff DIPINTO returned to work despite his limp and the limitations caused by his February 5th injury.

54. Upon returning to work, Defendant BRYANT discriminated and retaliated against Plaintiff DIPINTO by subjecting Plaintiff to excessive scrutiny because of Plaintiff's condition, his desire to request accommodations, and his desire to file disability paperwork.

55. On or about March 2, 2016, Defendant BRYANT called Plaintiff DIPINTO into Defendant COUNTY's office to berate him. Citing Plaintiff's condition, Defendant BRYANT told Plaintiff, **"YOU ARE ONE OF THE WORST OPERATORS HERE."**

56. As this was the first time Plaintiff DIPINTO learned of any alleged "performance issues," he was shocked and confused by Defendant BRYANT's above remarks. Plaintiff DIPINTO asked Defendant BRYANT, "What makes me a bad operator so I can correct the problem?"

57. Defendant BRYANT responded saying, **"I CAN'T THINK OF ANYTHING OFF THE TOP OF MY HEAD."**

58. Based on Defendant BRYANT's above conduct, just days after Plaintiff DIPINTO returned to work, it became clear that Defendant BRYANT's demeanor changed toward Plaintiff and he in fact intended to terminate Plaintiff.

59. On March 11, 2016, in fear of being unlawfully terminated, Plaintiff DIPINTO emailed Defendant LAURO requesting that he transfer Plaintiff away from Defendant BRYANT's location to escape Defendant BRYANT's excessive scrutiny and intimidation.

60. Plaintiff DIPINTO's above email to Defendant LAURO communicated his belief that the matter complained of, Defendant BRYANT's excessive scrutiny, was harassment and discrimination or, in the alternative, could become, harassment and discrimination.

61. On March 12, 2016, Defendant BRYANT aggressively approached Plaintiff DIPINTO in the Operations Office and said, **"YOU GET INJURED TOO EASILY TO WORK HERE."**

62. Defendant BRYANT's above comments were a threat to Plaintiff and in retaliation for Plaintiff's objections to Defendant BRYANT's unlawful conduct.

63. On or about March 13, 2016, Plaintiff DIPINTO sent a second transfer request via regular mail to Defendant LAURO. Included in Plaintiff's transfer request, Plaintiff complained of Defendant BRYANT's conduct, his fears of retaliation, and requested privacy in the matter because he did not want Defendant BRYANT to confront him again in retaliation for wanting to file a discrimination and harassment complaint.

64. Plaintiff DIPINTO's second transfer request via mail to Defendant LAURO communicated his belief that the matter complained of, Defendant BRYANT's excessive scrutiny, was harassment and discrimination on the basis of his disability or, in the alternative, could become, harassment and discrimination on the basis of his disability.

65. At all material times, Defendant COUNTY and Defendant LAURO failed to respond to (i) Plaintiff DIPINTO's transfer request, (ii) investigate Defendant BRYANT's unlawful conduct, or (iii) take corrective action concerning Defendant BRYANT for his conduct stated herein.

66. On or about March 18, 2016, Defendant BRYANT continued to intimidate Plaintiff DIPINTO by stopping Plaintiff on his way to a meeting with Defendant COUNTY's employee TOM CASH. When Defendant BRYANT stopped Plaintiff DIPINTO, he threatened, **"DON'T MAKE A BIG DEAL ABOUT THIS. IF YOU FILE A COMPLAINT YOUR JOB WILL BE IN JEOPARDY,"** and **"REMEMBER YOU'RE STILL ON PROBATION, THE COUNTY LOOKS DOWN ON THINGS LIKE THIS."**

67. Defendant BRYANT said the above in reference to his earlier threats concerning Plaintiff's injury and Plaintiff's legal rights regarding his disability under ADA.

68. On or about April 2, 2016, Plaintiff DIPINTO's crew changed and his supervisor changed to Defendant COUNTY's Supervisor DAVE SCARLOTTO ("SCARLOTTO") along with Supervisor WOZNIAK.

69. On April 12, 2016, Defendant BRYANT needlessly made Plaintiff DIPINTO walk from one side of the Yonkers Joint Wastewater Treatment Plant to the other side—a walk which was over a mile—knowing of Plaintiff's debilitated foot.

70. After Plaintiff DIPINTO returned, Defendant BRYANT only asked Plaintiff how his foot was and sent him back to work.

71. Defendant BRYANT intentionally acted in the above manner, solely to intimidate, physically torment, and harm Plaintiff, and in retaliation for Plaintiff DIPINTO's two complaints to Defendant LAURO.

72. On or about April 25, 2016, after Defendant BRYANT called Plaintiff DIPINTO to go to his office to wrongly complain about Plaintiff's performance.

73. Later that day, Defendant COUNTY's Supervisor of Operations JOHN LENNON told Plaintiff, "**I DON'T KNOW WHAT HIS PROBLEM IS WITH YOU, BUT JUST TRY TO YOUR BEST TO AVOID HIM. HE HAS A TARGET ON YOUR BACK.**"

74. On or about May 2, 2016, Supervisor SCARLOTTO told Plaintiff that Defendant BRYANT directed him to only give Plaintiff work in "Samples" because Plaintiff needed, "**TO WORK HARDER.**"

75. "Samples" was the most difficult position at the Yonkers Joint Wastewater Treatment Plant because it included the most walking and time. At the "Samples" position, employees typically walked a total of about 4 miles of walking per day, going to the "Primary," "Secondary," and "Final" water tanks to test the aeration and take samples of the waste, water, and oxygen test, then take the samples and tests back to the main building. These tests and samples were taken three times per day. Each inspection typically took 60 minutes to 90 minutes.

76. Other positions at the Yonkers Joint Wastewater Treatment Plant included working at "Primary," "Secondary," and "Building."

77. The "Primary" position involved monitoring pumps and the influent flow of waste and tanks were clustered together. Each inspection in "Primary" would typically take 45 minutes and involved minimal walking.

78. The "Secondary" position involved monitoring pumps, flow, and boilers in the main building and it was one of the easiest positions to work because this section rarely had complications and required the least amount of walking. Each inspection in "Secondary" would typically take 30 minutes.

79. The "Building" position involved monitoring centrifuges and hoppers in the main building. It was one of the easiest positions to work because this section rarely had complications and required minimal walking. Each inspection would typically take 15 to 20 minutes.

80. At all material times, because some positions were more difficult than others, especially as "Samples" was the most difficult, all employees would rotate between "Samples," "Primary," "Secondary," and "Building" each week to keep the workload fair.

81. Defendant BRYANT permanently moved Plaintiff DIPINTO to "Samples" as punishment for Plaintiff complaining to Defendant LAURO and as a threat to remind Plaintiff of Defendant BRYANT's power over him.

82. In March 2016, Plaintiff DIPINTO complained to Supervisor SCARLOTTO about Defendant BRYANT forcing him to work the difficult "Samples" position indefinitely—a position especially difficult because of Plaintiff's injury.

83. Also throughout March 2016, Plaintiff DIPINTO complained to Supervisor SCARLOTTO about his difficulties working in "Samples" because of Plaintiff's disability, therefore requesting accommodations.

84. On or about May 20, 2016, Defendant COUNTY's employee overheard Defendant BRYANT say to the Process Control Manager DOUG FAULKOFF, **"PHIL IS USELESS, I'M GOING TO MAKE HIS LIFE HELL UNTIL HE QUITS."**

85. The following month, on or about June 20, 2016, Supervisor SCARLOTTO told Plaintiff DIPINTO that Defendant BRYANT requested him to, **"BE HARDER ON YOU."**

86. On or about August 23, 2016, Defendant BRYANT terminated Plaintiff DIPINTO. Defendant BRYANT told Plaintiff, **"YOU NO LONGER WORK FOR WESTCHESTER COUNTY."**

87. Confused, Plaintiff DIPINTO asked Defendant BRYANT why. Defendant BRYANT replied, "**I DON'T HAVE TO GIVE YOU A REASON, NOW TAKE YOUR SHIT AND GO!**"

88. At a later date, Defendant BRYANT stated that Plaintiff DIPINTO was terminated for "**LACK OF PERFORMANCE**," and that this was reached based on interviews with Plaintiff DIPINTO's coworkers and supervisors, and a performance review done by his last supervisor, SCARLOTTO.

89. At the time, Plaintiff's previous supervisor SCARLOTTO was a "Temporary" supervisor on probation and not yet a fully hired supervisor. Thus, SCARLOTTO's review should have been given less weight or no weight at all.

90. Additionally, Defendant BRYANT failed to interview or consult Plaintiff DIPINTO's two previous supervisors, ROGERS and WOZNIAK.

91. Supervisor WOZNIAK had been Plaintiff DIPINTO's supervisor the longest, for nearly eight months.

92. Defendants should have involved Supervisor WOZNIAK in Plaintiff's evaluation process.

93. Nevertheless, at all material times, Plaintiff DIPINTO's performance was satisfactory and none of Plaintiff's supervisors recommended his termination. Additionally, Plaintiff DIPINTO was never written up for performance or conduct issues.

94. At the time of Plaintiff DIPINTO's unlawful termination, Defendant BRYANT forced him to work in the Yonkers Joint Wastewater Treatment Plant's most difficult position, "Samples," for nearly four months while injured and limping.

95. At all material times, other employees at the Yonkers Joint Wastewater Treatment Plant rotated amongst the various positions — between "Samples," "Primary," "Secondary," and "Building" — every week to keep the workload fair.

96. Defendant BRYANT failed to rotate Plaintiff DIPINTO like other employees, thus intentionally denying him of a simple accommodation for Plaintiff's disability and/or perceived disability.

97. Defendant BRYANT failed to rotate Plaintiff DIPINTO like other employees in retaliation for Plaintiff's earlier complaints and Plaintiff's requests for accommodation.

98. At all material times, Plaintiff's condition was a physical impairment that substantially limited major life activities such as walking and certain aspects of his work, and Plaintiff had a record of this impairment.

99. At all material times, Plaintiff was disabled, walking with a limp and suffering permanent loss of use in both his right foot (20 percent loss of use) and left foot (10 percent loss of use).

100. Alternatively, Defendants regarded Plaintiff as having such an impairment and Plaintiff's impairment was not transitory or minor.

101. At all material times, Defendant COUNTY and COUNTY's supervisors were aware of Plaintiff DIPINTO's disability, as (i) Plaintiff routinely complained of the amount of walking he was required to do while working "Samples," (ii) Plaintiff routinely made request to rotate out of "Samples" because of his condition, and (iii) Defendants saw Plaintiff limp when he walked.

102. At no time did Defendant COUNTY initiate the interactive process to identify a reasonable accommodation for Plaintiff DIPINTO's "known" disability.

103. At all material times, Defendant COUNTY ignored Plaintiff DIPINTO's requests for a reasonable accommodation. By way of example, rotating out of "Samples" into another position that did not require as much walking was reasonable and would not cause an undue hardship because other workers typically rotated.

104. As a result of Defendants' above actions, Plaintiff DIPINTO felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

105. As Defendant BRYANT's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

106. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

107. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

108. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

109. The above are just some of the examples of unlawful, discriminatory, and retaliatory conduct to which Defendants subjected Plaintiff.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT
(Against Defendant County)

110. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

111. Plaintiff claims Defendant COUNTY violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

112. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of

employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

113. Defendant COUNTY violated the sections cited herein by failing to consider Plaintiff's requests for a reasonable accommodation, as well as discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of his disability and for having complained of discrimination.

114. 29 C.F.R. § 1630.2(o)(3) and (4) explains the term "**Reasonable Accommodations**" stating:

> (3) To determine the appropriate reasonable accommodation it may be necessary for the covered entity to <u>initiate an informal, interactive process with the individual with a disability in need of the accommodation</u>. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.
>
> (4) A covered <u>entity is required</u>, absent undue hardship, <u>to provide a reasonable accommodation to an otherwise qualified individual who meets the definition of disability</u> under the "actual disability" prong ( paragraph (g)(1)(i) of this section), or "record of" prong ( paragraph (g)(1)(ii) of this section)…

115. Defendant COUNTY violated Plaintiff's rights under the ADA by (i) discriminating against Plaintiff regarding the conditions and privileges of employment because of his disability, (ii) terminating Plaintiff for having a disability, (iii) failing to consider Plaintiff's requests for a reasonable accommodation, and (iv) because Defendant COUNTY failed to initiate such discussions.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT
### (Against Defendant County)

116. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

117. Plaintiff claims Defendant COUNTY violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

118. SEC. 12203 "**Prohibition against retaliation and coercion**" [Section 503] (a) and (b) outlines retaliatory conduct, stating:

>   (a) Retaliation
>     No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
>   (b) Interference, coercion, or intimidation
>     It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.
>
>   (c) Remedies and procedures
>     The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively.

119. Defendant COUNTY violated the above by discriminating against Plaintiff because he opposed the unlawful conduct stated herein.

**AS A THIRD CAUSE OF ACTION
FOR DISCRIMINATION UNDER
NEW YORK STATE LAW
(Against All Defendants)**

120. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

121. New York State Executive Law §296 provides that:

>   1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual

17

orientation, military status, sex, <u>disability</u>, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

…

3. (a) It shall be an <u>unlawful discriminatory practice</u> for an employer, licensing agency, employment agency or labor organization <u>to refuse to provide reasonable accommodations to the known disabilities of an employee</u>, prospective employee or member in connection with a job or occupation sought or held or participation in a training program.

(b) Nothing contained in this subdivision shall be construed to require provision of accommodations which can be demonstrated to impose an undue hardship on the operation of an employer's, licensing agency's, employment agency's or labor organization's business, program or enterprise.

> In making such a demonstration with regard to undue hardship the factors to be considered include:
>> (i) The overall size of the business, program or enterprise with respect to the number of employees, number and type of facilities, and size of budget;
>> (ii) The type of operation which the business, program or enterprise is engaged in, including the composition and structure of the workforce; and
>> (iii) The nature and cost of the accommodation needed.

122. Defendants engaged in an unlawful discriminatory practice by (i) discriminating against Plaintiff because of his disability, (ii) creating a hostile work environment, (iii) failing to provide reasonable accommodations, and (iv) eventually terminating Plaintiff.

123. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

### AS AN FOURTH CAUSE OF ACTION
### FOR RETALIATION UNDER
### NEW YORK STATE LAW
### (Against All Defendants)

124. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

125. New York State Executive Law §296 (7) provides that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

126. Defendants engaged in an unlawful discriminatory practice by retaliating against the Plaintiff and terminating Plaintiff for his protected activity under New York State Executive Law.

### AS A FIFTH CAUSE OF ACTION
### FOR AIDING AND ABETTING UNDER
### NEW YORK STATE LAW
### (Against All Defendants)

127. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

128. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

129. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all available damages including but not limited to emotional distress, lost wages, back

pay, front pay, punitive damages, statutory damages, attorneys' fees, costs, medical expenses, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Dated: New York, New York
      January 29, 2018

                                      Respectfully submitted,

                                      DEREK SMITH LAW GROUP, PLLC
                                      *Attorneys for Plaintiff*

                                      By: Kelly O'Connell
                                      One Penn Plaza, Suite 4905
                                      New York, NY 10119
                                      (212)-587-0760