UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PHILLIP DIPINTO,

                                    Plaintiff,

            v.

WESTCHESTER COUNTY, *et al.*,

                                    Defendants.

---

No. 18-CV-793 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Kelly L. O'Connell, Esq.
Derek Smith Law Group, PLLC
New York, NY
*Counsel for Plaintiff*

Fay A. Jones, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Phillip Dipinto ("Plaintiff") brings this Action against Westchester County, Jeffrey

Bryant ("Bryant"), and Thomas Lauro ("Lauro") (collectively, "Defendants"), alleging unlawful

discrimination and retaliation in violation of the Americans with Disabilities Act of 1990

("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the New York State Human Rights Law

("NYSHRL"), N.Y. Exec. Law § 296 *et seq.* (*See* Am. Compl. ¶¶ 116–35 (Dkt. No. 21).)[1]

---

[1] A district court lacks personal jurisdiction over those defendants not properly served. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). Here, although the docket sheet indicates that service was effected on Lauro in February 2018, (Dkt. No. 15), Defendants argued that Lauro was not properly served, (Dkt. No. 16), and Plaintiff thereafter requested additional time to "reserve" Lauro, (Dkt. No. 22). The Court granted the request and directed that service be effected by July 25, 2018. (Dkt. No. 23.) That deadline

Before the Court is Defendants' Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (Not. of Mot. (Dkt. No. 52).) For the following reasons, the Motion is granted in part and denied in part.

## I. Background

### A. Factual History

The following facts are drawn from the Amended Complaint and are taken as true for purposes of resolving the instant Motion.

In October 2014, Plaintiff was hired by Westchester County as a "Wastewater Treatment Operator" at the Yonkers Joint Wastewater Treatment Plant (the "Plant"). (Am. Compl. ¶¶ 21, 34.) Plaintiff was initially a "temporary employee," during which time he had "no status." (*Id.* ¶¶ 34, 37.) In September 2015, Plaintiff became a "probationary employee," which he was required to be for a "52-week . . . period in order to qualify as a full-time employee." (*Id.* ¶¶ 35–36.)

On February 5, 2016, Plaintiff suffered an on-the-job injury in which an "angle iron fell

---

passed without service being effected, and the Court directed Plaintiff explain "why the claims against any unserved Defendants should not be dismissed for failure to timely serve them." (Dkt. No. 27.) Plaintiff responded, (Dkt. No. 28), and the Court held a conference, at which it directed that Plaintiff "must re-serve Defendants by 10/30/2018," (Dkt. (minute entry for Oct. 16, 2018 conference)). A summons was thereafter issued as to all Defendants, including Lauro, (Dkt. No. 35), but there is no indication that service was effected on Lauro.

On August 9, 2019, Plaintiff filed a letter again arguing that Lauro was served properly in February 2018 at his place of business (the County of Westchester), further stating that newly conducted research suggests that Lauro still works for the County, and requesting 30 days to (re)serve Lauro. (Dkt. No. 58.) On August 17, 2019, Defendants filed a responsive letter and affidavit stating that Lauro has not been a County employee since November 2017 and, therefore, that it would have been impossible for service to have been effected in February 2018. (Dkt. Nos. 59, 60.)

The Court directs that Plaintiff complete service on Lauro within 30 days of the date of this Opinion, or he will be dismissed from this case. *See Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778, 2019 WL 1437823, at *20 (S.D.N.Y. Mar. 29, 2019) (dismissing individual defendants where service was not effected).

on his feet and ankles, severely bruising several bones . . . in his right foot and causing a contusion to the left foot." (*Id.* ¶ 38.) The injury caused Plaintiff to "walk[] with a limp," as he "suffered 20 percent permanent loss of use" in his right foot and "10 percent permanent loss of use" in his left foot. (*Id.* ¶ 39; *see also id.* ¶ 1 (alleging that the injury caused him to "develop[] a limp and permanent disability in both feet); *id.* ¶ 40 (alleging the condition "substantially limited [Plaintiff's] major life activities, such as walking").)

"Immediately" after being injured, Plaintiff "filed an accident report" with his supervisor. (*Id.* ¶ 42.) The same day, Defendant Bryant, the Plant Superintendent, (*id.* ¶ 23), "called Plaintiff into his office," "demanded that Plaintiff . . . stand next to his desk so that [he] could inspect [the] injury," and told Plaintiff, "'If you are too injured to work, maybe you are not cut out to work here.'" (*Id.* ¶¶ 43–45.)[2] Bryant also told Plaintiff, "'Don't fill out a workers['] compensation claim! If you do, your employment will be in jeopardy.'" (*Id.* ¶ 46.) Because of this, Plaintiff "did not file any claims for disability discrimination, retaliation, reasonable accommodations, or for disability leave." (*Id.* ¶ 48.)

Plaintiff thereafter left work for two weeks on a "previously-scheduled . . . vacation." (*Id.* ¶ 52.) Upon returning to work on February 22, 2016, Plaintiff walked with a "limp" and had "limitations." (*Id.* ¶ 53.)

In the months following the injury, Bryant "subject[ed] Plaintiff to excessive scrutiny because of [his] condition, his desire to request accommodations, and his desire to file disability paperwork." (*Id.* ¶ 54.) On March 2, 2016, Bryant "berate[d]" Plaintiff, calling him "one of the worst operators here." (*Id.* ¶ 55.) Prior to the injury, Plaintiff had "never received any

---

[2] The Court notes that the Amended Complaint uses all-caps throughout when quoting individuals' alleged statements.

performance complaints or write-ups." (*Id.* ¶ 50.) When Plaintiff asked what "performance issues" there were, Bryant stated, "'I can't think of anything off the top of my head.'" (*Id.* ¶¶ 56–57.)

On March 11, 2016, Plaintiff sent a transfer request to Defendant Lauro, the Westchester County Commissioner, (*id.* ¶ 25), in order to move away from Bryant, (*id.* ¶ 59). The next day, Bryant "aggressively approached Plaintiff" and told him, "'You get injured too easily to work here.'" (*Id.* ¶ 61.) On March 13, 2016, Plaintiff sent a "second transfer request" to Lauro. (*Id.* ¶ 63.) Lauro failed to respond or to investigate Bryant's conduct. (*Id.* ¶ 65.)

On March 18, 2016, Bryant "stopp[ed] Plaintiff on a way to a meeting" and told him, "'Don't make a big deal about this. If you file a complaint your job will be in jeopardy. Remember you're still on probation, the County looks down on things like this." (*Id.* ¶ 66.)

On April 2, 2016, Plaintiff's "crew changed," and his new direct supervisors were Dave Scarlotto and Andrew Wozniak. (*Id.* ¶ 69.) Nevertheless, on April 12, 2016, Bryant "needlessly made Plaintiff . . . walk from one side of the [Plant] to the other side — a walk which was over a mile — knowing of Plaintiff's debilitated foot." (*Id.* ¶ 70.) On April 25, 2016, Bryant again "wrongly complain[ed] about Plaintiff's performance." (*Id.* ¶ 73.) The same day, Plaintiff was told by John Lennon, the Plant's Supervisor of Operations, "'I don't know what [Bryant's] problem is with you, but just try to [do] your best to avoid him. He has a target on your back.'" (*Id.* ¶ 74.)

On May 2, 2016, Scarlotto told Plaintiff that Bryant "directed him to only give Plaintiff work in 'Samples' because Plaintiff needed[] 'to work harder.'" (*Id.* ¶ 75.) "'Samples' was the most difficult position" at the Plant, as it "included the most walking and time," up to "4 miles of walking per day." (*Id.* ¶ 76; *see also id.* ¶ 7 (describing "Samples" as the "most physically

demanding rotation"); *id.* ¶¶ 77–81 (comparing the "Samples" position to other positions at the

Plant).) Other employees "would rotate between "Samples" and the Plant's other positions "to

keep the workload fair." (*Id.* ¶ 81.) Yet, Bryant "permanently moved Plaintiff . . . to 'Samples'

as punishment for [his] complaining to . . . Lauro and as a threat to remind Plaintiff of [his]

power over him." (*Id.* ¶ 82.) Working in Samples "caused Plaintiff great pain and aggravated

his disability." (*Id.* ¶ 7.) Plaintiff complained about this treatment to Scarlotto. (*Id.* ¶ 83.)

In May 2016, an unnamed employee at the Plant "overheard" Bryant say to another

employee, "[Plaintiff] is useless, I'm going to make his life hell until he quits.'" (*Id.* ¶ 85.) In

June 2016, Scarlotto told Plaintiff that "Bryant requested him to[] 'be harder on [Plaintiff].'" (*Id.*

¶ 86.) Finally, on August 23, 2016, Bryant terminated Plaintiff. (*Id.* ¶ 87.) Although Bryant did

not initially give Plaintiff a reason for the termination, (*id.* ¶ 88), he later stated that he was

"terminated for 'lack of performance,' and that this [decision] was reached based on interviews

with Plaintiff['s] . . . coworkers and supervisors, and a performance review done by . . .

Scarlotto," (*id.* ¶ 89), who was still a temporary employee, (*id.* ¶ 90). Bryant "failed to

interview" Plaintiff's prior supervisors, with whom he had worked for a longer period of time.

(*Id.* ¶¶ 91–93.) Throughout his employment, Plaintiff's "performance was satisfactory" and he

"was never written up for performance or conduct issues." (*Id.* ¶ 94.)

B. Procedural History

On January 12, 2017, Plaintiff filed an employment discrimination charge with the New

York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity

Commission ("EEOC"). (Am. Compl. ¶ 14.) The NYSDHR found that "probable cause existed

to believe that [Plaintiff's employer] had engaged in unlawful discriminatory practices." (*Id.*

¶ 15.) On August 7, 2017, Plaintiff "requested an administrative convenience dismissal" from

the NYSDHR, which was granted on September 11, 2017. (*Id.* ¶¶ 16–17.) On December 1, 2017, Plaintiff received from the EEOC a right to sue letter. (*Id.* ¶ 18.)

The initial Complaint was filed on January 29, 2018. (Compl. (Dkt. No. 1).) The instant Amended Complaint was filed on July 7, 2018. (Am. Compl. (Dkt. No. 21).)

Defendants filed the instant Motion To Dismiss on February 19, 2019. (Not. of Mot. (Dkt. No. 52); Decl. of Fay A. Jones, Esq. in Supp. of Mot. ("Defs.' Decl.") (Dkt. No. 53); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 54).) On March 12, 2019, Plaintiff filed a response in opposition. (Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 55).) On March 25, 2019, Defendants filed a reply. (Reply Aff. in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 56); Decl. of Fay A. Jones in Supp. of Mot. ("Defs.' Reply Decl.") (Dkt. No. 57).)

## II. Discussion

Plaintiff brings five causes of action: (1) discrimination, in violation of the ADA, as to Westchester County, (Am. Compl. ¶¶ 116–21); (2) retaliation, in violation of the ADA, as to Westchester County, (*id.* ¶¶ 122–25); (3) discrimination, in violation of the NYSHRL, as to all Defendants, (*id.* ¶¶ 126–29); (4) retaliation, in violation of the NYSHRL, as to all Defendants, (*id.* ¶¶ 130–32); and (5) aiding and abetting, in violation of the NYSHRL, as to all Defendants, (*id.* ¶¶ 133–35).[3]

---

[3] Plaintiff, who has counsel, does not bring an equal protection claim against any Defendant. The Court therefore does not fully consider whether Plaintiff states such a claim. The Court notes only that, in order to state an equal protection claim, Plaintiff must allege, among other things, that he suffered "adverse treatment . . . compared with other similarly situated individuals." *Miner v. Clinton County*, 541 F.3d 464, 474 (2d Cir. 2008) (citation and quotation marks omitted). The Complaint identifies no other similarly situated individual. *See Carnell v. Myers*, No. 17-CV-7693, 2019 WL 1171489, at *10 (S.D.N.Y. Mar. 13, 2019) (dismissing equal protection claim where the plaintiff "failed to allege or identify a single similarly situated individual who was treated differently" (citation and quotation marks omitted)).

Defendants seek dismissal of the Amended Complaint principally on grounds (1) that Plaintiff's claims are barred by collateral estoppel; (2) that Plaintiff fails on the merits to state a discrimination, retaliation, or hostile work environment claim under the ADA or NYSHRL; and (3) that Plaintiff fails to establish *Monell* liability as to Westchester County.  (*See generally* Defs.' Mem.)[4]  The Court addresses each argument separately to the extent necessary.

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that

[4] The Court notes that, although Defendants seek dismissal of a hostile work environment claim, (Defs.' Mem. 9), and argue that Plaintiff fails to establish *Monell* liability against Westchester County, (*id.* at 9–10), Plaintiff has not brought either a hostile work environment claim or a claim pursuant to 42 U.S.C. § 1983, (*see* Am. Compl. ¶¶ 116–35).

Further, to the extent Defendants also make a qualified immunity "argument," (*see* Defs.' Mem. 7–8), Defendants merely restate the qualified immunity caselaw without meaningfully applying it to the facts of the case.  The Court therefore declines to consider at this time whether individual Defendants are protected by qualified immunity.

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

B. Analysis

1. Collateral Estoppel

Defendants argue that Plaintiff's claims are barred by collateral estoppel. (Defs.' Mem. 4–5; Defs.' Reply 5–6.) Collateral estoppel, also known as issue preclusion, "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." *Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) (citation and quotation marks omitted)). Collateral estoppel will preclude a court from deciding an issue where "(1) the identical issue was raised in a previous proceeding; (2) the issue was

actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (citation and quotation marks omitted). "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995); *see also Thomas v. Venditto*, 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) (same).

Here, Defendants argue that collateral estoppel applies because the New York Workers' Compensation Board ("WCB") "determined and affirmed its decision, finding [that Plaintiff's] termination was a 'business' decision and not in retaliation for the filing of his accident report." (Defs.' Mem. 4–5; *see also* Defs.' Decl. Ex. B (May 2018 letter from WCB to Plaintiff confirming filing of appeal); *id.* Ex. C (June 2018 decision of WCB affirming initial decision).)

"[I]n federal actions based on 42 U.S.C. § 1983, state administrative fact-finding is given the same preclusive effect as it would receive in courts of the same state." *Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005) (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986)); *see also Ferraro v. N.Y.C. Dep't of Educ.*, 752 F. App'x 70, 73 (2d Cir. 2018) (noting that courts "generally give preclusive effect to a state agency's administrative findings if the state's courts would do the same" (citing *Burkybile*)). "New York courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate." *Burkybile*, 411 F.3d at 310 (citations omitted); *see also Ferraro*, 752 F. App'x at 73 (same); *Sloth v. Constellation Brands, Inc.*, 924 F. Supp. 2d 461, 469 (W.D.N.Y. 2013) (same).

However, it is "well established that state administrative proceedings not reviewed by state court do not have preclusive effect on an ADA claim." *Gorbea v. Verizon New York, Inc.*, No. 11-CV-3758, 2014 WL 2916964, at *2 (E.D.N.Y. June 25, 2014) (citation and quotation marks omitted); *see also Ferraro*, 752 F. App'x at 73 ("[A]s to certain federal civil rights claims, including those brought under . . . the ADA, there is an additional prerequisite: We give preclusive effect only to a state agency's findings that have been judicially reviewed." (citations omitted)); *Van Ever-Ford v. New York*, No. 13-CV-412, 2019 WL 1922065, at *4 (W.D.N.Y. Apr. 30, 2019) ("[W]hile the Supreme Court has not yet addressed the preclusive effect of unreviewed state administrative findings under the ADA, almost every court of appeals to do so has found no such preclusion . . . ." (collecting cases)); *K.C. v. Chappaqua Cent. Sch. Dist.*, No. 16-CV-3138, 2017 WL 2417019, at *6 (S.D.N.Y. June 2, 2017) (noting that "the Second Circuit has held that . . . an unreviewed state administrative decision has no preclusive effect on ADA claims" (citing *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 735 (2d Cir. 2001))).  There is no indication here that Plaintiff's employment discrimination claims were reviewed by a New York state court.  Accordingly, Plaintiff's claims brought pursuant to the ADA are not precluded by collateral estoppel.  *See Kosakow*, 274 F.3d at 735 ("[T]o the extent [the plaintiff's] employment discrimination claims were based on the ADA, the determinations of the [NYSDHR] would have had no effect on subsequent federal litigation." (citations omitted)); *Howard v. Conn. Dep't of Transp.*, No. 14-CV-947, 2015 WL 5797013, at *3 (D. Conn. Sept. 30, 2015) (declining to apply collateral estoppel to ADA claims "when, as here, [the] agency determinations [were] unreviewed"); *Gorbea*, 2014 WL 2916964, at *3 (holding that the "plaintiff's federal ADA retaliation claim is not precluded by the decision of the [WCB]"); *Rahman v. Museum of Nat. Hist.*, No. 10-CV-921, 2012 WL 1077679, at *8 (E.D.N.Y. Mar. 30,

2012) (declining to give preclusive effect to state administrative proceedings not reviewed by state court).

In contrast with his claims brought pursuant to the ADA, Plaintiff's claims brought pursuant to New York law are subject to application of traditional collateral estoppel principles. *See Rahman*, 2012 WL 1077679, at *8 ("With respect to [the] plaintiff's [non-federal] claims, federal courts must give a state agency acting in a judicial capacity the same preclusive effect to which it would be entitled in the State's courts as long as the parties have had an adequate opportunity to litigate." (citation and quotation marks omitted)). As noted, for collateral estoppel to apply, it must be shown that "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Ball*, 451 F.3d at 69. Here, Defendants' collateral estoppel argument, which runs to less than a single paragraph, (Defs.' Mem. 5), does not meaningfully apply the collateral estoppel case law to the facts of this case. "[T]he determination of whether or not collateral estoppel should apply in a case is a fact-intensive inquiry that is to be made on a case-by-case basis." *Sloth*, 924 F. Supp. 2d at 471. Accordingly, the Court declines, at this stage, to consider whether Plaintiff's claims brought pursuant to New York law are precluded by collateral estoppel. *See id.* ("[U]nder New York Law, even in cases where all of the elements of collateral estoppel have been satisfied, it lies within the discretion of the trial court whether to apply the doctrine of collateral estoppel, and the doctrine need not be applied even if all of the prerequisites to the doctrine have been met" (citation and quotation marks omitted)). Defendants are free to raise and more fully develop this argument at a later stage. *See Karam v. County of Rensselaer*, No. 13-CV-1018, 2016 WL 3029951, at *2

(N.D.N.Y. May 25, 2016) (considering, on motion in limine and developed record, whether collateral estoppel barred relitigation of WCB determination); *Sloth*, 924 F. Supp. 2d at 469–71 (considering, on motion for summary judgment and developed record, whether collateral estoppel barred relitigation of WCB determination); *Rahman*, 2012 WL 1077679, at *8 (same).

### 2. ADA and NYSHRL Discrimination Claims

Plaintiff brings claims of disability discrimination, in violation of the ADA, as to Westchester County, (Am. Compl. ¶¶ 116–21), and in violation of the NYSHRL, as to all Defendants, (*id.* ¶¶ 126–29).

Disability discrimination claims under the ADA and NYSHRL § 296(2)(a) are analyzed under the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). Under this test, a plaintiff must first establish a prima facie case of disability discrimination. *Id.* To do so, a plaintiff must demonstrate that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Id.* (citation omitted).[5] "New

---

[5] If an employee establishes a prima facie case of discrimination, the burden shifts to the defendant-employer, who may rebut his claim with legitimate, non-discriminatory reasons for the adverse employment action. *See Sattar v. Johnson*, 129 F. Supp. 3d 123, 137 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 1 (2d Cir. 2016). "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981) (citation omitted). For example, "[a]n employer's dissatisfaction with even a qualified employee's performance may, of course, ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action." *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001). If the defendant presents legitimate reasons for the employment action, the burden shifts back to the plaintiff to plausibly allege "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Sattar*, 129 F. Supp. 3d at 137 (quoting *Patterson v. County of Oneida*, 375

York State disability discrimination claims are governed by the same legal standards as federal ADA claims." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004) (citation omitted). The Court will thus analyze the Plaintiff's ADA and NYSHRL § 296 claims in tandem. *See Novick v. Vill. of Wappingers Fall*s, 376 F. Supp. 3d 318, 342 (S.D.N.Y. Mar. 27, 2019) (analyzing ADA and NYSHRL claims together).

Defendants argue only that Plaintiff cannot establish a disability discrimination claim because he does not suffer from a qualifying disability. (Defs.' Mem. 5–7.) The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; *or* (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1) (emphasis added); *accord Widomski v. State Univ. of New York at Orange*, 748 F.3d 471, 474 (2d Cir. 2014). "An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(ii). "[M]ajor life activities include," as relevant here, "performing manual tasks, . . . walking, standing, . . . and working." 42 U.S.C. § 12102(2)(A). "[T]he determination of the existence of a substantial limitation on a major life activity must be determined on a case-by-case basis." *Capobianco v. City of New York*, 422 F.3d 47, 59 (2d Cir. 2005). Further, "'[s]ubstantially limits' is not meant to be a demanding standard," since "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether

_____

F.3d 206, 221 (2d Cir. 2004)). However, because a plaintiff need not make out a prima facie case at the motion to dismiss stage, because the facts alleged in a plaintiff's complaint are assumed to be true, and because in adjudicating a Rule 12(b)(6) motion a district court must confine its consideration to facts stated on the face of the complaint, Defendants cannot at this stage introduce evidence of non-discriminatory reasons for their treatment and termination of Plaintiff's employment. The Parties do not address the subsequent steps of the *McDonnell* test in their briefing, and the Court does not consider those steps at this stage.

discrimination has occurred, not whether an individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(1)(i), (iii); *accord Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 n.3 (2d Cir. 2014). Therefore, "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(1)(iii).

Here, Plaintiff alleges that in February 2016, while on the job, an "angle iron fell on his feet and ankles, severely bruising several bones . . . in his right foot and causing a contusion to the left foot"; that this "obvious" injury caused him to "walk[] with a limp"; that "according to medical professionals" he "suffered 20 percent permanent loss of use" in his right foot and "10 percent permanent loss of use" in his left foot; and that the limp "substantially limited" his ability to walk. (Am. Compl. ¶¶ 1, 38–41, 53, 99–100.) In addition, Plaintiff alleges that he "[i]mmediately" reported his injury by "fil[ing] an accident report" with his supervisor, (*id.* ¶ 42), that Bryant "inspect[ed] [the] injury" the same day it occurred, (*id.* ¶¶ 43–44), and that, on multiple occasions thereafter, Bryant told Plaintiff that his injury prevented him from being able to effectively work, (*id.* ¶¶ 45, 55, 61, 73, 85), warned Plaintiff against filing a workers' compensation claim, (*id.* ¶¶ 46, 66), and assigned him to work the "most difficult position" at the Plant without rotation, (*id.* ¶¶ 70–82). The Court concludes — particularly given that the "definition of disability" is to be "construed in favor of broad coverage," 42 U.S.C. § 12102(4)(A) — that these allegations suffice, at this stage of litigation, to plead that he suffered from a physical impairment that substantially limited a major life activity, and that he was regarded by his employer as having a physical impairment, *see* 42 U.S.C. § 12102(1), such that he qualifies as disabled within the meaning of the ADA. *See DeAngelis v. Long*, No. 18-CV-755, 2018 WL 2582613, at *5 (D. Conn. June 4, 2018) (holding the plaintiff "sufficiently alleged

facts showing that he has a qualifying disability" where he "allege[d] that he suffers from degenerative disc disease with a disc protrusion displacing the S1 nerve" and that "[a]s a result, walking is painful and he must use a cane"); *Jansson v. Stamford Health, Inc.*, No. 16-CV-260, 2017 WL 1289824, at *13–14 (D. Conn. Apr. 5, 2017) (holding the plaintiff "alleged [a] plausible claim[] for discrimination . . . under the ADA for the disabilit[y] of 'mid-foot arthritis'" where the plaintiff alleged that the arthritis caused swelling and "pain walking and standing"); *see also Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21–22 (2d Cir. 2015) ("[The plaintiff] has plausibly alleged that she [is disabled under the ADA] by stating that she suffered a fracture and also damage to the ulnar and median nerve distributions, resulting in temporary total disability and, ultimately, permanent partial disability with limitations on lifting and repetitive motion, and that her injury took her off work for medical care and treatment." (citations, quotation marks, and alteration omitted)). This is not a case in which Plaintiff has alleged only a temporary or limited injury. *See Dudley v. N.Y.C. Hous. Auth.*, No. 12-CV-2771, 2014 WL 5003799, at *34 (S.D.N.Y. Sept. 30, 2014) (holding the plaintiff did not allege a qualifying disability where he alleged that he "was recovering after surgery for a torn meniscus" and "he had to walk with a cane"); *Green v. DGG Props. Co.*, No. 11-CV-1989, 2013 WL 395484, at *11 (D. Conn. Jan. 31, 2013) (dismissing ADA claim where the complaint did not "allege the nature of [the plaintiff's] disability, claim that his use of a walker or wheelchair was permanent or chronic, or indicate the duration or long-term impact of his impairment such that the Court may reasonably infer that his condition was anything but temporary"); *Smith v. Reg'l Plan Ass'n, Inc.*, No. 10-CV-5857, 2011 WL 4801522, at *5 (S.D.N.Y. Oct. 7, 2011) ("To the extent [the plaintiff] alleges walking as a major life activity that was affected by her [ankle] fracture, she has not pled facts suggesting that her ability to walk was substantially limited."). Nor is this a case

in which Plaintiff has alleged only a restriction on his ability to walk "brisk[ly]." *Kelly v. N.Y. State Office of Mental Health*, 200 F. Supp. 3d 378, 392 (E.D.N.Y. 2016). Moreover, to the extent Defendants argue that Plaintiff "never provide[d] any medical documentation for his alleged disability," (Defs.' Mem. 7), the Court notes that "a plaintiff alleging disability discrimination is not required to attach any particular documentation to [his] complaint," *Lam v. N.Y.C. Dep't of Educ.*, No. 18-CV-2756, 2019 WL 2327655, at *7 (S.D.N.Y. May 30, 2019), and that, as noted above, Plaintiff alleged facts plausibly suggesting that Bryant — the Plant Superintendent who terminated Plaintiff, (Am. Compl. ¶¶ 23, 26, 87) — regarded Plaintiff as having a disability.

Accordingly, the Court denies Defendants' Motion To Dismiss Plaintiff's ADA and NYSHRL discrimination claims. Defendants remain free to raise and more fully develop this argument at a later stage. *See Cady v. Bolivar-Richburg Cent. Sch. Dist.*, No. 12-CV-1121, 2016 WL 8291111, at *7 (W.D.N.Y. Nov. 28, 2016) (holding, on motion for summary judgment, that the plaintiff failed to provide sufficient evidence that her lumbar disc herniation, which caused a "moderate limitation in her ability to walk," was a disability for purposes of the ADA), *adopted by* 2017 WL 713715 (W.D.N.Y. Feb. 21, 2017); *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 296 (S.D.N.Y. 2014) (holding, on motion for summary judgment, that the record did not establish that the plaintiff's "knee injury," which "impaired his ability to walk," was more than "temporary"); *Mazur v. N.Y.C. Dep't of Educ.*, 53 F. Supp. 3d 618, 635–36 (S.D.N.Y. 2014) (holding, on motion for summary judgment, that the record did not establish that the plaintiff's ankle injury substantially limited his ability to walk where he "stated that the ankle injury was not permanent and, aside from lingering weakness, [did] not cause[] any permanent changes in her major life activities"); *McDonald v. City of New York*, 786 F. Supp. 2d 588, 608 (E.D.N.Y.

2011) (holding, on motion for summary judgment, that the plaintiff's allegation that his ability to walk and stand was substantially limited was undercut by his "vague and ambiguous descriptions . . . of his limitations" and "the record evidence that [he] was cleared by his doctor to walk up to three miles per day"); *cf. Lyman v. New York & Presbyterian Hosp.*, No. 11-CV-3889, 2014 WL 3417394, at *9 (S.D.N.Y. July 14, 2014) (holding, on motion for summary judgment, the plaintiff offered sufficient evidence that her hip impairment substantially limited her ability to walk).

### 3. ADA and NYSHRL Retaliation Claims

Plaintiff brings claims of retaliation, in violation of the ADA, as to Westchester County, (Am. Compl. ¶¶ 122–25), and in violation of the NYSHRL, as to all Defendants, (*id.* ¶¶ 130–32).

The ADA prohibits employers from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The NYSHRL contains a similar provision against retaliation, *see* N.Y. Exec. Law § 296(7), and is governed by the same standard, *see Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (applying ADA analysis to retaliation claim under both ADA and NYSHRL).

"Retaliation claims under the ADA are analyzed using the same framework applied in Title VII cases." *Thompson v. City of New York*, No. 03-CV-4182, 2007 WL 4224370, at *4 (S.D.N.Y. Nov. 21, 2007) (citing *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001)), *adopted by* 2008 WL 294290 (S.D.N.Y. Feb. 1, 2008), *aff'd*, 348 F. App'x 643 (2d Cir. 2009). To state a claim, a plaintiff must establish that: "[1] a plaintiff was engaged in protected activity; [2] the alleged retaliator knew that [the] plaintiff was involved in protected

activity; [3] an adverse decision or course of action was taken against plaintiff; and [4] a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (citation and quotation marks omitted); *accord McGuire-Welch v. House of the Good Shepherd*, 720 F. App'x 58, 62 (2d Cir. 2018). "A plaintiff's burden at this prima facie stage is de minimis." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation and italics omitted).

Defendants argue that Plaintiff fails to allege that he engaged in protected activity. (Defs.' Mem. 6–7.) "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Rajcoomar v. Bd. of Educ.*, No. 16-CV-1682, 2017 WL 980616, at *6 (S.D.N.Y. Mar. 13, 2017) (quoting *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012)). "The complaint can be informal — an employee does not need to lodge a formal complaint of discrimination." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 222 (E.D.N.Y. 2014) (citations omitted). Rather, the employee's "complaint must be sufficiently pointed to be reasonably understood as a complaint of discrimination." *Goonewardena v. N. Shore Long Island Jewish Health Sys.*, No. 11-CV-2456, 2013 WL 1211496, at *9 (E.D.N.Y. Mar. 25, 2013) (citation and quotation marks omitted), *aff'd*, 597 F. App'x 19 (2d Cir. 2015); *see also Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 30 (2d Cir. 2015) (holding that a plaintiff "must allege that [her employer was] on notice that [her] complaints were about [statutorily prohibited] discrimination, not just general unsatisfactory or unfair conduct").

As an initial matter, it is clear that Plaintiff's employment discrimination charge filed with the NYSDHR and EEOC cannot be the protected activity upon which his retaliation claim is based, for that charge, allegedly filed in January 2017, postdated by several months his

termination in August 2016.  (Am. Compl. ¶¶ 14, 87.)  *See Adams v. City of New York*, 837 F.

Supp. 2d 108, 123 (E.D.N.Y. 2011) ("[The plaintiff's] federal EEOC complaint about [the

alleged] punishment . . . postdates the adverse employment actions taken against her.  These

adverse employment actions, therefore, cannot be retaliatory as a matter of law and logic."

(citing *Slattery v. Swiss Reins. America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001))); *see also Barrer-*

*Cohen v. Greenburgh Cent. Sch. Dist.*, No. 18-CV-1847, 2019 WL 3456679, at *6 (S.D.N.Y.

July 30, 2019) ("Plaintiff's ADEA retaliation claim fails because the temporal relationship

between the protected activity and the adverse action is backwards . . . .").

The question, then, is whether Plaintiff has plausibly alleged any other protected activity.

According to the Amended Complaint, Plant Superintendent Bryant's post-injury verbal

harassment of Plaintiff, (Am. Compl. ¶¶ 45–46, 54–58), caused Plaintiff, on March 11, 2016, to

send a request to Commissioner Lauro that "he transfer Plaintiff away from . . . Bryant's location

to escape . . . Bryant's excessive scrutiny and intimidation," (*id.* ¶ 59).  That transfer request

allegedly "communicated [Plaintiff's] belief that . . . Bryant's excessive scrutiny[] [w]as

harassment and discrimination."  (*Id.* ¶ 60.)  The next day, Bryant again harassed Plaintiff,

allegedly "in retaliation for Plaintiff's objections to . . . Bryant's unlawful conduct," by

"aggressively approach[ing] [him]" and telling him, "'You get injured too easily to work here.'"

(*Id.* ¶¶ 61–62.)  In response, the next day, March 13, 2016, Plaintiff "sent a second transfer

request" to Lauro, in which he again "complained of . . . Bryant's conduct[] [and] his fears of

retaliation and "requested privacy in the matter because he did not want . . . Bryant to confront

him again in retaliation for wanting to file a discrimination and harassment complaint."  (*Id.*

¶ 63.)  That request too allegedly "communicated [Plaintiff's] belief that . . . Bryant's excessive

scrutiny[] was harassment and discrimination on the basis of his disability."  (*Id.* ¶ 64.)

In response, Defendants argue that, "in [Plaintiff's] two requests for transfers he never

mentions his disability, never provided any medical documentation for his alleged disability[,]

[and never] request[s] any accommodations for his alleged disability." (Defs.' Mem. 6–7.)  In

support, Defendants submit a copy of Plaintiff's second transfer request of March 13, 2016.

(Defs.' Reply Decl. Ex. D ("Mar. 13, 2016 Transfer Request").)[6]  That letter, written by Plaintiff

and sent to Lauro, states that "the expectations [Plaintiff] had in order to progress as an operator

. . . have not been met and may be in conflict to the way certain dynamics are run at this plant";

that Plaintiff "feel[s] as if [his] work performance and willingness to explore new ideas is

constantly being thwarted for unknown reasons"; that his "actions and work performance are met

with much resistance rather than constructive criticism"; that "[r]ecent discussions about [his]

character have led [him] to believe that this feeling is not based on a performance issue but rather

---

[6] A court addressing a Rule 12(b)(6) motion "may consider," in addition to the operative pleading, "any . . . statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiff['s] possession or of which [he] had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (citations, alterations, and quotation marks omitted).  "To be incorporated by reference, the [c]omplaint must make a clear, definite and substantial reference to the documents." *Thomas v. Westchester County Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citation omitted).  Here, Plaintiff's transfer requests, as the only possible protected activities upon which he may base his retaliation claims and which Plaintiff explicitly references in his Amended Complaint, (Am. Compl. ¶¶ 59–64), are integral documents that the Court may consider. *See Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 143 (E.D.N.Y. 2018) (holding, on motion to dismiss, that the court will consider documents where "[t]he [p]laintiff specifically mention[ed] the[] documents throughout the complaint and relied on their terms or contents while drafting the complaint"); *Falcon v. City Univ. of New York*, 263 F. Supp. 3d 416, 424 (E.D.N.Y. 2017) (holding, on motion for judgment on the pleadings, that the court will consider EEOC documents submitted by the defendant where "the complaint references the [p]laintiff's EEOC filings, and she even included the EEOC's findings, and her right to sue letters," and "[a]lthough [the plaintiff] did not include all of the EEOC paperwork . . . , she ha[d] notice of those documents because she submitted them and received them, and she based the instant action on those proceedings").

[on] a personal issue"; and, finally, that a "transfer to another facility will allow [him] the opportunity to grow . . . without being met with resistance."  (Mar. 13, 2016 Transfer Request.)

Reading the allegations in the Amended Complaint — which are somewhat thin — together with the statements made by Plaintiff in his second transfer request, the Court cannot conclude that Plaintiff plausibly "opposed an[] act . . . made unlawful by this chapter," 42 U.S.C. § 12203(a), such that it could be said he engaged in protected activity for purposes of a retaliation claim.  Plaintiff's transfer request uses only vague and general language relating to the fulfillment of his own professional goals; nowhere does he name Bryant (or anyone else), mention the injury to his feet, describe any disability-based harassment or discrimination, or otherwise indicate that the transfer request is based on a protected status.  *See Martel v. New Eng. Home Care, Inc.*, No. 09-CV-1412, 2014 WL 3687738, at *14 (D. Conn. July 22, 2014) ("Complaints that are vague and ambiguous and do not sufficiently articulate the nature of the harassment do not constitute a protected activity." (citation and quotation marks omitted)); *see also Kendricks v. Westhab, Inc.*, 163 F. Supp. 2d 263, 271 (S.D.N.Y. 2001) (dismissing retaliation claim because the plaintiff's "outspoken ways" and protests were generalized complaints and were not alleged to be based on a protected status), *aff'd*, 40 F. App'x 619 (2d Cir. 2002).

Indeed, to the extent the transfer request can be read as raising a complaint, it squarely chalks up that complaint to a "a personal issue."  (Mar. 13, 2016 Transfer Request.)  *See Kouakou v. Fideliscare N.Y.*, 920 F. Supp. 2d 391, 400 (S.D.N.Y. 2012) (holding that the plaintiff did not allege protected activity where the complaint "relate[d] only to a personality dispute").  Simply put, the Court cannot say that Plaintiff has plausibly alleged that his transfer request was "sufficiently pointed to be reasonably understood as a complaint *of discrimination*."

*Goonewardena*, 2013 WL 1211496, at *9 (emphasis added) (citation and quotation marks omitted); *see also Int'l Healthcare Exch., Inc. v. Global Healthcare Exch.*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) (noting that "ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity"). The Court therefore concludes that Plaintiff fails to plausibly allege his engagement in protected activity for purposes of stating a retaliation claim and, accordingly, dismisses Plaintiff's second and fourth causes of action. *See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013) (affirming dismissal where, "[a]lthough [the plaintiff] allege[d] that she repeatedly used the words 'discrimination' and 'harassment' when complaining to her employers, . . . [t]here [was] no indication . . . that her employers could have understood her complaints" as "complaining of conduct prohibited by Title VII"); *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) ("[The plaintiff's] complaints . . . did not state that [she] viewed [her supervisor's] actions as based on her gender, and there was nothing in her protests that could reasonably have led [her employer] to understand that that was the nature of her objections."); *Lorenz v. Erie Cmty. Coll.*, No. 14-CV-210, 2018 WL 2939492, at *5 (W.D.N.Y. June 12, 2018) (holding that the plaintiff did not establish protected activity where his "union grievance made no complaint regarding discrimination, nor even a mention of age, disability, or his purported inability to teach additional seated courses due to his health"); *Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 458 (E.D.N.Y. 2014) (dismissing retaliation claim where "the amended complaint indicate[d] that the [p]laintiff did not put her employer on notice of the alleged racial discrimination"); *Foster v. Humane Soc'y of Rochester & Monroe County, Inc.*, 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) (dismissing retaliation claim where the plaintiff's "own allegations, and the documents she relies on, show . . . that while she did complain about

certain problems she was having at work, she did not complain that she was being discriminated against on account of her sex"); *see also Moore v. City of New York*, 745 F. App'x 407, 409 (2d Cir. 2018) (affirming dismissal of ADA claim on grounds that "[a] mere mention of feeling 'discriminated against' is not enough to put an employer on notice of a protected complaint if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory" (citation and quotation marks omitted)).

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion To Dismiss with respect to Plaintiff's ADA and NYSHRL retaliation claims.  The Court denies Defendants' Motion To Dismiss with respect to Plaintiff's ADA and NYSHRL disability discrimination claims.  Dismissal is without prejudice.  Plaintiff may file a second amended complaint with the Court within 30 days of the date of this Opinion.  Plaintiff should include within that second amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider.  Plaintiff is further advised that the second amended complaint will completely replace, not supplement, the instant Amended Complaint.  The second amended complaint must contain all of the claims, exhibits, and factual allegations that Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, the claims dismissed without prejudice may be dismissed *with* prejudice, and Plaintiff's case will go forward only on those claims not dismissed.

Plaintiff shall complete service on Lauro within 30 days of the date of this Opinion, or he will be dismissed from this case.

The Clerk of the Court is respectfully requested to terminate the pending Motion. (Dkt. No. 52.)

SO ORDERED.

DATED: August 29, 2019
     White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE