UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILLIP DIPINTO,

                   Plaintiff,

         -against-

WESTCHESTER COUNTY, et al.,

                 Defendants.

**MEMORANDUM OPINION
AND ORDER**

18-CV-00793 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Phillip Dipinto ("Plaintiff") brings this action against Westchester County ("County"), Thomas Lauro ("Lauro"), and Jeffrey Bryant ("Bryant" and collectively "Defendants") alleging generally that he was discriminated against—and his constitutional rights were violated—while serving as a County employee in 2016.

Plaintiff filed his Complaint on January 29, 2018. (Doc. 1). Plaintiff filed his First Amended Complaint ("FAC") with leave of the Court on July 7, 2018. (Doc. 21, "FAC"). The FAC pressed the following five (5) claims for relief: (1) discrimination, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq*., against the County (*id*. ¶¶ 116-21); (2) retaliation, in violation of the ADA, against the County (*id*. ¶¶ 122-25); (3) discrimination, in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296 *et seq*., against all Defendants (*id*. ¶¶ 126-29); (4) retaliation, in violation of the NYSHRL, against all Defendants (*id*. ¶¶ 130-32); and (5) aiding and abetting, in violation of the NYSHRL, against all Defendants (*id*. ¶¶ 133-35). On February 19, 2019, Defendants moved to dismiss the FAC for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Docs. 52-54). That motion was fully briefed on March 25, 2019. (*See* Docs. 55-56).

On August 30, 2019, Judge Karas issued an Opinion & Order dated August 29, 2019 ("Prior Order") granting without prejudice Defendants' motion to dismiss with respect to the second and fourth claims alleged in the FAC (those alleging retaliation in violation of the ADA and NYSHRL). (Doc. 60, "Prior Ord.").[1] Judge Karas instructed that: (1) Plaintiff could "file a second amended complaint with the Court within 30 days of the date of this Opinion;" and (2) "Plaintiff shall complete service on Lauro within 30 days of the date of this Opinion, or he will be dismissed from this case." (*Id*. at 23). Plaintiff filed his Second Amended Complaint ("SAC") on September 17, 2019. (Doc. 61, "SAC").

The SAC presents nine (9) separate claims for relief: (1) ADA discrimination against the County (*id*. ¶¶ 133-38); (2) ADA retaliation against the County (*id*. ¶¶ 139-42); (3) ADA hostile work environment against the County[2] (*id*. ¶¶ 143-48); (4) NYSHRL discrimination against all Defendants (*id*. ¶¶ 149-52); (5) NYSHRL retaliation against all Defendants (*id*. ¶¶ 153-55); (6) NYSHRL hostile work environment against all Defendants (*id*. ¶¶ 156-61); (7) NYSHRL aiding and abetting against all Defendants (*id*. ¶¶ 162-64); (8) discrimination and due process under 42 U.S.C. § 1983 against all Defendants (*id*. ¶¶ 165-78); and (9) hostile work environment under 42 U.S.C. § 1983 against all Defendants (*id*. ¶¶ 179-92). Approximately three months later, on December 4, 2019, Defendants moved to dismiss the SAC under Federal Rule of Civil Procedure

---

[1] The Prior Order is also available on commercial databases. *See Dipinto v. Westchester Cty.*, No. 18-CV-793, 2019 WL 4142493 (S.D.N.Y. Aug. 30, 2019). For ease of reference, all citations to the Prior Order herein will be to the copy filed on ECF.

[2] The third claim for relief indicates that it is "Against All Defendant County." (SAC at 21). As "there is no individual liability under the ADA," *Gomez v. New York City Police Dep't*, 191 F. Supp. 3d 293, 302-03 (S.D.N.Y. 2016), the Court assumes Plaintiff meant to plead this claim for relief against the County only.

12(b)(6). (Doc. 75; Doc. 77, "Def. Br.").[3] Plaintiff opposed Defendants' motion on February 12, 2020 (Doc. 80, "Opp'n. Br.") and the motion was fully briefed with the filing of Defendants' reply on March 16, 2020 (Doc. 83, "Reply Br."). On April 16, 2020, this matter was reassigned to me.

For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part.

## BACKGROUND

While the FAC consisted of one hundred thirty-five (135) paragraphs and pressed five (5) claims for relief over twenty-one (21) pages, the SAC presents one hundred ninety-two (192) paragraphs and asserts nine (9) claims for relief over twenty-nine (29) pages. (*Compare* FAC, *with* SAC). The Court assumes the parties' familiarity with the principal allegations as laid out in the Prior Order (*see* Prior Ord. at 2-5), addresses the County's arguments *seriatim*, *infra*, and incorporates the SAC's new factual allegations where appropriate.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[3] Defendants filed four Exhibits in support of their new motion. Attached to Defense Counsel's Declaration were: (1) the SAC (Doc. 76-1, Peart Decl. Ex. A); (2) a June 19, 2018 Panel Decision from the New York State Workers' Compensation Board (Doc. 76-2, Peart Decl. Ex. B); (3) a March 13, 2016 message from Plaintiff to Lauro (Doc. 76-3, Peart Decl. Ex. C); and (4) an August 14, 2016 Performance Review for Plaintiff (Doc. 76-4, Peart Decl. Ex. D). The Court considers only the March 2016 message from Plaintiff to Lauro requesting a transfer, as Plaintiff argues that these support the finding of a policy for his § 1983 claims and, as such, is integral to the SAC. (*Compare* SAC ¶¶ 3, 8, 64-66, 73, 83, 118, 121-23, *with* Opp'n. Br. at 29-31); *see also Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014) ("[T]he Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it . . . ."); *Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) (explaining that the Court may consider "documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit"). The remaining documents, the Workers' Compensation Board Panel Decision and the August 2016 Performance review, are not considered at this juncture because: (1) the Court exercises its discretion to deny dismissal on the basis of collateral estoppel; and (2) Plaintiff claims the performance review was manufactured to justify his unlawful termination. (*See* discussion *infra*). These factual issues may be addressed at a later stage.

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## **ANALYSIS**

I. <u>Plaintiff's Failure to Serve Lauro in Compliance with the Prior Order</u>

The Court turns first to Plaintiff's compliance with the Court's direction that he "complete service on Lauro within 30 days of the date of this Opinion, or he will be dismissed from the case." (Prior Ord. at 2 n.1 (citing *Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778, 2019 WL 1437823, at *20 (S.D.N.Y. Mar. 29, 2019)), 23). Based upon the information set forth in the docket sheet, as Plaintiff has not complied with this directive, Lauro is dismissed from this case.

"The lawful exercise of personal jurisdiction by a federal court requires" among other things, that "the plaintiff's service of process upon the defendant must have been procedurally proper." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). The Federal Rules of Civil Procedure instruct in pertinent part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). This action was filed in January 2018 and Plaintiff's time to serve Lauro was extended into September 2019, over a year and a half later. (Prior Ord. at 2 n.1, 23). Yet, while an amended summons was issued on September 18, 2019 (Doc. 63), Plaintiff has not filed proof of service, has not requested an extension of time to serve Lauro, and Defendants suggest—in passing and in reply—that service was never effectuated (*see* Reply Br. at 8 ("Plaintiff's continued failure to serve Lauro . . . .")). Despite the Court's direction and the fundamental principle that "[t]he burden of proving jurisdiction is on the party asserting it," *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994), Plaintiff provides no reason to believe that Lauro was served in accordance with the Prior Order's directive. As such, Lauro is dismissed from this proceeding.[4]

---

[4] The § 1983 claims against Lauro would nevertheless be dismissed for lack of personal involvement. Lauro's presence is limited to his position as the Commissioner of the department in which Plaintiff worked and the individual who never responded to Plaintiff's transfer requests. (*See* SAC ¶¶ 25-26, 60-61, 64-66, 73, 121-22). Plaintiff insists that Lauro was either "grossly negligent in supervising subordinates" or "deliberately indifferent" to Plaintiff's rights. (Opp'n. Br. at 29-30). While a supervisor's personal involvement may be pled on facts meeting such descriptions, *Raffaele v. City of New York*, 144 F. Supp. 3d 365, 377 (E.D.N.Y. 2015), such facts are not pled here. Plaintiff conceded that the transfer requests were not complaints of discrimination, and argues, without citation, that Lauro had an "obligation" to investigate the requests. (Opp'n Br. at 29). As the requests did not identify an unconstitutional practice, the argument is rejected. *See Malik v. City of New York*, No. 11-CV-6062, 2012 WL 3345317, at *15 (S.D.N.Y. Aug. 15, 2012) (complaint to jail superintendent was "insufficient to make out a *prima facie* claim of personal involvement against supervisors"), *adopted by* 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012).

II. <u>The NYSHRL Claims (Claims 4-7) Are Not Barred by Collateral Estoppel</u>

Defendants' first argument concerning the SAC is that Plaintiff's state law claims are barred by collateral estoppel. (Def. Br. at 4-6). The Prior Order observed that "Plaintiff's claims brought pursuant to New York law are subject to application of traditional collateral estoppel principles." (Prior Ord. at 11). Noting that Defendants' argument on this point ran "less than a single paragraph" and did "not meaningfully apply the collateral estoppel case law to the facts of this case," Judge Karas "decline[d], at this stage, to consider whether Plaintiff's claims brought pursuant to New York law are precluded by collateral estoppel." (*Id.*). While Defendants' argument on this point is more robust in the present briefing, the crux of the argument remains unchanged: collateral estoppel precludes Plaintiff's claims because "Plaintiff has raised the same issues of discrimination and retaliation that were already necessarily decided by the" Workers' Compensation Board. (Def. Br. at 5; *see also* Doc. 54 at 4-5; Doc. 56 at 4-5). As the Prior Order noted, "[U]nder New York Law, even in cases where all of the elements of collateral estoppel have been satisfied, it lies within the discretion of the trial court whether to apply the doctrine of collateral estoppel, and the doctrine need not be applied even if all of the prerequisites to the doctrine have been met." (Prior Ord. at 11 (quoting *Sloth v. Constellation Brands, Inc.*, 924 F. Supp. 2d 461, 471 (W.D.N.Y. 2013) (alteration in original)). As Defendants offer no reason to disturb the previous ruling on this argument, the Court will exercise the discretion permitted under New York law and deny the motion to dismiss based on a theory of collateral estoppel.[5] Defendants may raise this argument again at a later stage on a more fulsome record. (*Id*. at 11-12).

---

[5] Defendants suggest, in passing, that the claims are barred by the election of remedies doctrine. (Def. Br. at 5). However, Plaintiff's charge was dismissed by the New York State Division of Human Rights for administrative convenience. (SAC ¶¶ 14-17). Such a dismissal is an exception to the election of remedies doctrine Defendants seem to reference. *See York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 n.2 (2d Cir. 2002); N.Y. Exec. Law § 297(9).

III.   **A Notice of Claim Is Required to Proceed on the NYSHRL Claims (Claims 4-7) Against the County**

Defendants argue next that "all state law claims asserted should be dismissed for Plaintiff's failure to comply with a condition precedent: serving a notice of claim." (Def. Br. at 6). Plaintiff argues that a notice of claim is not required for claims under the NYSHRL. (Opp'n. Br. at 8-10). On this point, Defendants are correct to the extent that a timely notice of claim is required to pursue the NYSHRL claims against the County and Bryant in his official capacity.

As Plaintiff seeks to vindicate state law claims, those claims are "subject to state procedural rules." *Russell v. Westchester Cmty. Coll.*, No. 16-CV-1712, 2017 WL 4326545, at *5 (S.D.N.Y. Sept. 27, 2017) (internal quotation marks omitted). New York State County Law provides, in pertinent part:

> Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature . . . and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees must be made and served in compliance with section fifty-e of the general municipal law. Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law.

N.Y. Cty. Law § 52(1). Plaintiff cites precedent from before the turn of the century to support his position that a notice of claim is not required for claims under the NYSHRL (Opp'n. Br. at 9-10), but that is not an accurate statement of the law as it exists today. "It is well-established that a party bringing a claim pursuant to the NYSHRL against a county located in the State of New York must serve a notice of claim upon the county . . . ." *Costabile v. Cty. of Westchester, New York*, 485 F. Supp. 2d 424, 430 (S.D.N.Y. 2007); *see also Styles v. Westchester Cty.*, No. 18-CV-12021, 2020 WL 1166404, at *6 (S.D.N.Y. Mar. 10, 2020) (concluding "that the notice of claim requirements

set out in County Law Section 52 do generally apply to [NYSHRL] Claims for employment discrimination and retaliation against a county" (internal quotation marks omitted)); *Rodriguez v. Nassau Cty.*, No. 16-CV-2648, 2019 WL 4674766, at *16 (E.D.N.Y. Sept. 25, 2019) (dismissing plaintiff's NYSHRL claims for failure to file a notice of claim); *Russell*, 2017 WL 4326545, at *6 (concluding that "a notice of claim remains a prerequisite to" NYSHRL claims against a county); *Williams v. Cty. of Nassau*, No. 15-CV-7098, 2017 WL 1216566, at *6 (E.D.N.Y. Mar. 30, 2017) ("Since Plaintiff failed to timely file a notice of claim, the NYHRSL [sic] claims are dismissed.").

However, while the notice of claim requirement applies, Defendants' argument that *all* state law claims must be dismissed "sweeps too broadly" given the language of N.Y. County Law § 52(1). *See Hamilton v. Cty. of Onondaga, New York*, No. 15-CV-1333, 2018 WL 4554496, at *18 (N.D.N.Y. Sept. 21, 2018). This conclusion is the result of statutory interpretation. Section 52(1) requires that a notice of claim be "served in compliance with" N.Y. General Municipal Law § 50-e. N.Y. Cty. Law § 52(1). Under Section 50-e, if an action is commenced against an *employee* and not the County proper, "service of the notice of claim upon the public corporation shall be required *only if* the corporation has a statutory obligation to indemnify such person under this chapter or any other provision of law." N.Y. Gen. Mun. Law § 50-e(1)(b) (emphasis added). Phrased differently, "'the requirements of Sections 50-e and 50-i are not conditions precedent to the commencement of an action against a county official or employee unless the county is required to indemnify such person,' and '[t]he County's duty to indemnify these employees turns on whether they were acting within the scope of their employment.'" *Johnson v. Cty. of Nassau*, No. 10-CV-6061, 2014 WL 4700025, at *24 (E.D.N.Y. Sept. 22, 2014) (quoting *Wharton v. Cty. of Nassau*, No. 10-CV-265, 2013 WL 4851713, at *15 (E.D.N.Y. Sept. 10, 2013) (alteration in original)); *see also Dilworth v. Goldberg*, No. 10-CV-2224, 2011 WL 4526555, at *7 (S.D.N.Y.

Sept. 30, 2011) (notice of claim required because the plaintiff alleged specifically that defendants acted "within the scope of their employment").[6]

Bearing in mind that "workplace harassment and other intentional torts are generally not considered conduct within the scope of employment since they are often motivated by personal reasons," *Hamilton*, 2018 WL 4554496, at *18 (internal quotation marks omitted), Defendants make no argument that the County has a responsibility to indemnify Bryant or that the allegations were solely within the scope of his employment (*see* Def. Br. at 6-7; Reply Br. at 1-2). "Accepting the allegations in the [Second] Amended Complaint as true, as we must at this stage, the conduct of defendants appears to fall outside the scope of their employment, and defendants do not argue otherwise." *Costabile*, 485 F. Supp. 2d at 432. Accordingly, the NYSHRL claims against the County and Bryant in his official capacity are dismissed for failure to serve a notice of claim. The claims against Bryant in his individual capacity, however, shall proceed. Should they be so advised, Defendants may revive this argument at the summary judgment stage on a fuller record.

IV.   <u>Plaintiff Pled ADA (Claim 3) and NYSHRL (Claim 6) Hostile Work Environment Claims</u>

Defendants argued in their initial brief that Plaintiff failed to plead a hostile work environment claim under the NYSHRL only and later adjusted their argument to encompass both the NYSHRL and ADA hostile work environment claims. (*Compare* Def. Br. at 7-9, *with* Reply Br. at 2-3). While the Court need not consider arguments raised for the first time in reply memoranda, *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 n.5 (2d Cir. 2006) ("[W]e generally do not consider arguments that are raised for the first time in a reply brief") (Sotomayor, J.), as the standards are generally the same and Plaintiff suffers no prejudice, the Court considers the

---

[6] The Court notes that Defendants quote N.Y. General Municipal Law § 50-k(6)(a) in making their argument. (Def. Br. at 6). That provision, "Civil actions against employees of the city of New York," is inapplicable to this action. N.Y. Gen. Mun. Law § 50-k.

argument and concludes that Plaintiff has stated a claim for hostile work environment under both statutory regimes.

To state a claim for hostile work environment under the ADA or the NYSHRL against an employer, Plaintiff must allege: "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment[;] and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (first alteration in original)); *Viruet v. City of New York*, No. 16-CV-8327, 2019 WL 1979325, at *17 (S.D.N.Y. May 3, 2019) ("The same general standard also applies to hostile work environment claims brought under the NYSHRL . . . ."). The hostility must, of course, "occur[] because of a protected characteristic." *Chang v. New York City Dep't of Educ.*, 412 F. Supp. 3d 229, 248 (E.D.N.Y. 2019) (quoting *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015)); *see also Ruiz v. New Avon LLC*, No. 18-CV-9033, 2019 WL 4601847, at *15 n.14 (S.D.N.Y. Sept. 22, 2019) (explaining that the environment must exist "because of the plaintiff's [protected characteristic]" (alteration in original, internal quotation marks omitted)).

The first element "is subject to both subjective and objective measurement: the plaintiff must demonstrate that []he personally considered the environment hostile, and that the environment rose to some objective level of hostility." *Viruet*, 2019 WL 1979325, at *17 (quoting *Leibovitz v. New York City Trans. Auth.*, 252 F.3d 179, 188 (2d Cir. 2001)). As to the objective severity, "the workplace must be so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [the employee's] employment were thereby altered." *Stryker v. HSBC Secs. (USA)*, No. 16-CV-9424, 2020 WL 5127461, at *15 (S.D.N.Y. Aug. 31, 2020) (alteration in original, internal quotation marks omitted). "Courts look to 'the totality of the

circumstances to determine whether a plaintiff has met this burden, including proof of the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance.'" *Id.* (quoting *Fox*, 918 F.3d at 74 (alterations in original)); *see also Zhao v. Keuka Coll.*, 264 F. Supp. 3d 482, 495 (W.D.N.Y. 2017) ("When evaluating a hostile environment claim, the Court must not view individual incidents in isolation . . . but should consider the totality of the circumstances . . . ." (internal quotation marks omitted)). As to the second element, Plaintiff must "show[] that 'the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action.'" *Rella v. New York State Off. of Mental Health*, No. 19-CV-723, 2020 WL 918767, at *5 (N.D.N.Y. Feb. 26, 2020) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004)).[7]

Here, Defendants argue only that Plaintiff did not plead an objectively hostile work environment. (Def. Br. at 7-9; Reply Br. at 2-3). The Court disagrees. Plaintiff pled that: (1) on February 5, 2016, the day he was injured, Bryant directed Plaintiff not to fill out a workers' compensation claim, warned Plaintiff that submitting a claim would jeopardize Plaintiff's employment, and mused that if Plaintiff's injury prevented him from working that Plaintiff was "not cut out to work" for the County (SAC ¶¶ 38, 42-46); (2) on March 2, 2016, Bryant berated Plaintiff for being "one of the worst" employees but, when pressed for an explanation, admitted he could not articulate a reason (*id.* ¶¶ 56-58); (3) on March 12, 2016, the day after Plaintiff's first

---

[7] Defendants have not argued that Bryant would not qualify as Plaintiff's employer under the NYSHRL. (*See generally*, Def. Br.; Reply Br.). However, even if Bryant did not meet that definition, the absence of an "employer" would not necessarily bar liability, as Plaintiff presents also a claim for aiding and abetting under the NYSHRL (SAC ¶¶ 162-64). *See Johnson v. Cty. of Nassau*, 82 F. Supp. 3d 533, 538 (E.D.N.Y. 2015) (affirming on reconsideration that, although the NYSHRL claims were dismissed against the county for plaintiff's failure to serve a notice of claim, the individual defendant could be held individually liable for a NYSHRL hostile work environment claim "as an aider and abettor").

attempt to request a transfer, Bryant told Plaintiff that the latter got "injured too easily to work" for the County (*id*. ¶¶ 60-62); (4) on March 18, 2016, Bryant warned Plaintiff against complaining about discriminatory treatment and stated, "Remember[,] you're still on probation, the County looks down on things like this" (*id*. ¶¶ 67-69); (5) on April 12, 2016, Bryant made Plaintiff walk "over a mile" needlessly, while aware of Plaintiff's disability (*id*. ¶ 71-73); (6) on April 25, 2016, Bryant again criticized Plaintiff's performance and Plaintiff was advised by another employee, "I don't know what [Bryant's] problem is with you, but just try to [sic] your best to avoid him. [Bryant] has a target on your back" (*id*. ¶¶ 74-75); (7) on May 2, 2016, Bryant directed that Plaintiff work permanently only in "Samples," the most physically demanding position, despite the fact that employees usually rotated through that position to keep the "workload fair," in order to injure Plaintiff (*id*. ¶¶ 76-85); (8) on May 20, 2016, Bryant advised another employee that Plaintiff "is useless, I'm going to make his life hell until he quits" (*id*. ¶ 89); (9) on June 20, 2016, Bryant demanded that Plaintiff's immediate supervisor be "harder on" Plaintiff (*id*. ¶ 90); and (10) on August 23, 2016 Bryant terminated Plaintiff, stating, "I don't have to give you a reason, now take your shit and go!" (*id*. ¶¶ 91-92).

Looking to the totality of the circumstances, accepting the above-cited allegations as true while giving Plaintiff the benefit of every inference, and bearing in mind that "the Second Circuit has cautioned against 'setting the bar too high' at the motion to dismiss stage," *Rella*, 2020 WL 918767, at *5 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)) (denying motion to dismiss ADA hostile work environment claim), these allegations suggest plausibly that Plaintiff suffered an objectively hostile work environment that altered the conditions of his employment for the worse from the time he injured his foot until his termination. *See, e.g.*, *id.* (plaintiff alleged that she "was subjected to mistreatment by [a coworker] on multiple occasions" over four months);

*Salas v. New York City Dep't of Investigation*, 298 F. Supp. 3d 676, 684-85 (S.D.N.Y. 2018) (denying motion to dismiss hostile work environment claim where coworker mocked plaintiff's stutter on a daily basis); *Arnold v. Research Found. for State Univ. of New York*, 216 F. Supp. 3d 275, 290 (E.D.N.Y. Oct. 20, 2016) (finding amendment would plausibly state a hostile work environment claim against defendants whose "comments about the Plaintiff's use of a handicapped bathroom, cane and freight elevator plausibly support the allegation that Plaintiff faced harassment that altered her employment"); *Zavala v. Cornell Univ.*, 9 F. Supp. 3d 213, 220 (N.D.N.Y. 2014) (denying motion for judgment on the pleadings because plaintiff, who suffered from Type 1 Diabetes, stated hostile work environment claim where his supervisors' actions included "their threats regarding Plaintiff's use of internal human resources mechanisms" and assigning Plaintiff "tasks that required more walking," while aware of his mobility restrictions). Consequently, Defendants' motion to dismiss the ADA and NYSHRL hostile work environment claims is denied.

   V.   <u>Plaintiff Pled that He Requested a Reasonable Accommodation (Claim 1)</u>

Under the ADA, determining whether a plaintiff sought a reasonable accommodation is not concerned about "formalisms about the manner of the request, but whether the employee . . . provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." *Kurlender v. Ironside Grp., Inc.*, No. 18-CV-3839, 2019 WL 1317405, at *3 (E.D.N.Y. Mar. 22, 2019) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)); *see also Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 540 (S.D.N.Y. 2014) (same); *Goonan v. Fed. Reserve Bank of New York*, No. 12-CV-3859, 2014 WL 3610990, at *5 (S.D.N.Y. July 22, 2014) (same). The Court concluded previously that Plaintiff pled facts sufficient to suggest that Bryant perceived Plaintiff as disabled. (*See* Prior Ord. at 14, 16). The question for this Court, then, is whether

Plaintiff pled that his "employer c[ould] be fairly said to know of . . . [Plaintiff's] desire for an accommodation."[8]

Drawing all inferences in Plaintiff's favor from the facts pled and considering "the circumstances" under which Plaintiff sought transfers and complained to his supervisor throughout March 2016 with comments like, "I have an injured foot," "This is a lot of walking, it's hurting my foot. Jeff [Bryant] knows I have an injured foot, why did he put me on Samples?" (SAC ¶ 87), the Court finds that Plaintiff pled plausibly that Defendants knew of Plaintiff's disability *as well as* his "desire" for an accommodation of being transferred to a less physically demanding duty station—a request that, it seems, would at the very least place Plaintiff back into the normal practice of rotating through locations. (*Id.* ¶¶ 77-85, 102). Defendants argue that "[w]alking throughout the facility is an essential function of Plaintiff's former position," that the requests did not seek "different duties, different position[s], or even mention his injury," and that no accommodation would have been possible. (Def. Br. at 15). These points, valid or not, are inappropriate to consider at this stage. "Once a plaintiff has identified a facially reasonable accommodation, the defendant bears the burden of 'persuading *the factfinder* that the plaintiff's proposed accommodation is unreasonable.'" *Novick v. Vill. of Wappingers Falls, New York*, 376 F. Supp. 3d 318, 337 (S.D.N.Y. 2019) (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995) (emphasis in original)).

---

[8] Although the parties dispute whether Plaintiff sought a reasonable accommodation, none of their submissions identify the test by which a court can determine whether a plaintiff who did not formally submit a request for reasonable accommodation may, nevertheless, be deemed to have sought one from their employer. (*See generally* Def. Br. at 14-15; Opp'n. Br. at 18-20; Reply Br. at 4-5). In light of the parties' failure to brief the issue, to the extent necessary, the Court assumes without deciding that the standard applied to determine whether Plaintiff requested a reasonable accommodation under the ADA is synonymous with the standard applied under the NYSHRL. *See Reid v. Mary's N.E. at Herald Sq.*, No. 102458/2012, 2013 WL 1808087, at *1 (Sup. Ct. Apr. 17, 2013) (noting on claims under the NYSHRL and New York City Human Rights Law that "a request for accommodation need not take a specific form" (internal quotation marks omitted)); *Mioscia v. B.R. Guest Holdings LLC*, No. 116881/2009, 2010 WL 9949235, at *6 (Sup. Ct. July 13, 2010) (same).

VI.   Plaintiff Pled a Protected Activity for an ADA Retaliation Claim (Claim 2)

Defendants argue that Plaintiff did not plead the existence of a protected activity necessary to state either an ADA or NYSHRL retaliation claim. (Def. Br. at 15-16; Reply Br. at 5). The Court disagrees. "[T]he elements of a retaliation claim" under the ADA or the NYSHRL "are [1] a plaintiff was engaged in protected activity; [2] the alleged retaliator knew that plaintiff was involved in protected activity; [3] an adverse decision or course of action was taken against plaintiff; and [4] a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (internal quotation marks omitted); *see also Dodd v. City Univ. of New York*, --- F. Supp. 3d ---, 2020 WL 5750715, at *36 (S.D.N.Y. Sept. 25, 2020) ("Retaliation claims under the . . . ADA, and NYSHRL are governed by the same standards."). In the Prior Order, Judge Karas found that Plaintiff failed to plead sufficiently the protected activity identified, namely objecting to Bryant's discriminatory behavior. Specifically, Judge Karas concluded:

> Reading the allegations in the Amended Complaint—which are somewhat thin—together with the statements made by Plaintiff in his second transfer request, the Court cannot conclude that Plaintiff plausibly 'opposed an[] act . . . made unlawful by this chapter,' such that it would be said he engaged in protected activity for purposes of a retaliation claim.

(Prior Ord. at 21 (internal citations omitted)). Although the recitation of the retaliation claims for relief in the FAC and the SAC are identical (*compare* FAC ¶¶ 122-25, 130-32, *with* SAC ¶¶ 139-42, 153-55), Plaintiff suggests now that the protected activities were: (1) intending to file a workers' compensation claim; and (2) requesting a reasonable accommodation. (Opp'n. Br. at 21-24). Upon review, the Court finds that Plaintiff has pled properly a protected activity with respect to his ADA retaliation claim but not with respect to his NYSHRL retaliation claim.

Neither requesting a reasonable accommodation nor filing a workers' compensation claim constitute protected activities under the NYSHRL. *See Mejia v. City of New York*, No. 17-CV-2696, 2020 WL 2837008, at *13 (E.D.N.Y. May 30, 2020) (explaining that, under the NYSHRL, "a request for a reasonable accommodation is not a protected activity for purposes of a retaliation claim" (internal quotation marks omitted)); *Cho v. Young Bin Café*, 42 F. Supp. 3d 495, 508 (S.D.N.Y. 2013) (request for workers' compensation benefits "is simply not a protected activity"); *D'Amico v. City of New York*, 73 N.Y.S.3d 540, 558-59 (App. Div. 2018) ("Neither plaintiff's request for a reasonable accommodation nor his filing of an internal workers' compensation claim constitutes protected activities for purposes of the State and City HRLs." (internal citations omitted)); 18 N.Y. Jur. 2d Civil Rights § 121 ("Under both state and city human rights laws, a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim."). Accordingly, the NYSHRL retaliation claim must be dismissed. However, although filing a workers' compensation claim is likewise not a protected activity under the ADA, *Boyd v. Broome Cmty. Coll.*, No. 14-CV-397, 2015 WL 6962498, at *11 (N.D.N.Y. Nov. 10, 2015), requesting a reasonable accommodation does qualify as such an activity. *See Weixel*, 287 F.3d at 149 (finding that "seeking reasonable accommodation of . . . disability . . . constitutes protected activity" under the ADA); *Vale v. Great Neck Water Poll. Control Dist.*, 80 F. Supp. 3d 426, 439 (E.D.N.Y. Jan. 20, 2015) (noting that "[m]aking requests for reasonable accommodations for a disability is protected activity" under the ADA (alteration in original, internal quotation marks omitted)).

As Plaintiff has pled plausibly that he sought a reasonable accommodation under the ADA (*see* discussion *supra*), he pled a protected activity for his ADA retaliation claim. The NYSHRL retaliation claim, however, is dismissed.

16

VII.   Plaintiff Pled a Prima Facie Case of Discrimination Under the ADA (Claim 1)

"The elements of a [discrimination] claim under the ADA are that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by h[is] employer; (3) []he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) []he suffered an adverse employment action; and (5) the adverse employment action was imposed because of h[is] disability." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (quoting *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (first alteration in original)). Defendants insist that the Court must dismiss the ADA discrimination claim because: (1) Plaintiff did not suffer from a qualifying disability; (2) Defendants never perceived Plaintiff as disabled; and (3) Plaintiff did not suffer an adverse employment action because of his disability. (Def. Br. at 9-14; Reply Br. at 3-4).

The Court rejects Defendant's first two arguments—specifically that Plaintiff has not pled facts establishing that he suffered from a qualifying disability under the ADA and that Defendants never perceived him as disabled (Def. Br. at 9-11)—because Judge Karas, while reviewing the weaker FAC, already concluded otherwise in the Prior Order. (*See* Prior Ord. at 12-17). On the first argument, Judge Karas concluded that Plaintiff's "allegations suffice, at this stage of the litigation, to plead that he suffered from a physical impairment that substantially limited a major life activity, and that he was regarded by his employer as having a physical impairment such that he qualifie[d] as disabled within the meaning of the ADA." (*Id.* at 14 (internal citations omitted)). As to the second argument, Judge Karas determined that "Plaintiff alleged facts plausibly suggesting that Bryant—the Plant Superintendent who terminated Plaintiff—regarded Plaintiff as having a disability." (*Id.* at 16 (internal citations omitted); *see also id.* at 14). Making the same previously rejected arguments to a new judge does not change the result. As the law has not

changed and Plaintiff has only augmented his allegations, the Court concludes, as Judge Karas determined already, that Plaintiff pled plausibly facts identifying a qualifying disability under the ADA and Defendants' awareness of it.

Defendants' third argument, that Plaintiff did not plead an adverse employment action, stems from the premise that "[n]either Plaintiff's assignment to Samples nor the interactions between Defendant Bryant and Plaintiff amount to adverse employment acts" and "Plaintiff failed to make a plausible showing that he was terminated due to his alleged disability . . . ." (Def. Br. 13-14). The Court rejects this argument. "An adverse employment action under the ADA refers to a 'materially adverse change in the terms and conditions of employment' that is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Pinto v. New York City Admin. for Children's Servs.*, No. 18-CV-1852, 2018 WL 4333990, at *9 (S.D.N.Y. Sept. 11, 2018) (quoting *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)); *see also Smith v. N. Shore-Long Is. Jewish Health Sys.*, 286 F. Supp. 3d 501, 525-26 (E.D.N.Y. 2018) ("Under the ADA, '[a] plaintiff suffers an adverse employment action when []he experiences a materially adverse change in the terms and conditions of employment.'" (quoting *Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 147 (E.D.N.Y. 2015) (first alteration in original))). Such qualifying circumstances "include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Smith*, 286 F. Supp. 3d at 526 (quoting *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008)). "[D]isciplinary memoranda and evaluations" can qualify as "adverse employment actions" so long as "they affect ultimate employment decisions such as promotion, wages, or termination."

*Campbell v. New York City Trans. Auth.*, 93 F. Supp. 3d 148, 168 (E.D.N.Y. 2015) (alteration in original).

Here, Plaintiff alleged sufficiently at least two adverse employment actions: (1) Plaintiff's direct supervisor, under threat of termination from Bryant, submitted a poor performance review that could be used as a sham justification to terminate Plaintiff (SAC ¶¶ 94-95); and (2) Plaintiff was terminated (*id.* ¶¶ 91-93). According to the SAC, the poor performance review was used as an *ex post facto* justification for Plaintiff's termination (*id.* ¶¶ 91-95), and both the review and the termination itself were products of Bryant's campaign to "make [Plaintiff's] life hell until [Plaintiff] quit[]" because of Plaintiff's injury (*see id.* ¶¶ 34-46, 56-58, 62, 67, 71-73, 76-85, 89-95). Moreover, Plaintiff's allegations provide "plausible support to a minimal inference of discriminatory motivation [that is required] at the pleading stage." *Kopchik v. Town of East Fishkill, New York*, 759 F. App'x 31, 37 (2d Cir. 2018) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

VIII.   Plaintiff Has Not Pled a Policy Sufficient to Proceed under *Monell* (Claims 8-9)

Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and its progeny, a municipality may be held liable where a plaintiff's constitutional rights are violated because of a municipal policy or custom. *See Jimenez v. City of New York*, No. 18-CV-7273, 2020 WL 1467371, at *3 (S.D.N.Y. Mar. 26, 2020) ("Plaintiff must plead allegations that 'the government body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation.'" (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011))). "[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the

municipality caused the injury." *Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)). Defendants assert two arguments against Plaintiff's *Monell* claim[9] in this scenario: (1) as Plaintiff has "no property rights in his position" he did not suffer a constitutional deprivation; and (2) Plaintiff failed to plead "the existence of a single policy or custom" necessary to state a *Monell* claim. (Def. Br. at 16-19; Reply Br. at 5-7).

Defendants' first argument, that there is no constitutional deprivation because Plaintiff has no "property rights in his position" (Def. Br. at 18), misconstrues Plaintiff's claim. Plaintiff alleged that "Defendants denied equal protection of the laws by discriminating against [Plaintiff] on the basis of protected activity, disability and/or perceived disability." (SAC ¶ 168; *see also* Opp'n Br. at 25-26). Plaintiff, even as a probationary employee, is not barred from proceeding on a claim that his employer violated his right to equal protection. In fact, *Desir v. Bd. of Co-op. Educ. Servs.*, No. 07-CV-1994, 2008 WL 4508735 (E.D.N.Y. Sept. 30, 2008)—cited by Defendants for this proposition (Def. Br. at 17-18)—supports this conclusion. In that case, the court dismissed the former teacher's "substantive" and "procedural due process" claims because the plaintiff's status as a probationary employee did not confer a protected property interest. *Id*. at *2-3. However, that court refused to dismiss the plaintiff's claim that school administrators and board members discriminated against him on the basis of race, in violation of his right to equal protection under the Fourteenth Amendment. *Id* at *3; *see also Melendez v. Cty. of Westchester*, No. 17-CV-9637,

---

[9] The eighth and ninth claims for relief are identical, save for their titles and one additional reference to termination in the latter claim for relief. (*Compare* SAC ¶¶ 165-78, *with id*. ¶¶ 179-91). Accordingly, the ninth claim for relief is dismissed as duplicative of the eighth. *See Macineirghe v. Cty. of Suffolk*, No. 13-CV-1512, 2015 WL 4459456, at *16 (E.D.N.Y. July 21, 2015) ("[I]t is within the Court's discretion to dismiss duplicative claims *sua sponte*."); *Bd. of Trs. of IBEW Local 43 Elec. Contractors Health & Welfare & Pension Funds v. D'Arcangelo & Co.*, No. 12-CV-1251, 2012 WL 6681765, at *2 (N.D.N.Y. Dec. 21, 2012) ("Where, as here, separately pleaded claims are based upon the same operative facts and do not allege distinct damages, the duplicative claims should be dismissed.").

2019 WL 251731, at *9-11 (S.D.N.Y. Jan. 16, 2019) (denying dismissal of probationary employee's claim for violation of equal protection but dismissing employee's due process claims).

Defendants' second argument, that Plaintiff failed to plead "the existence of a single policy or custom that would implicate the County" (Def. Br. at 19), fares better. There are several ways in which Plaintiff may demonstrate that an official policy or custom existed, including:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 390 (S.D.N.Y. 2013) (quoting *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996)). The policy "may be pronounced or tacit and reflected in either action or inaction." *Davis v. City of New York*, 959 F. Supp. 2d 324, 338 (S.D.N.Y. 2013) (quoting *Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011)).

Plaintiff alleged that he was discriminated against "on the basis of protected activity, disability and/or perceived disability." (SAC ¶ 168). As to establishing a policy, Plaintiff argues that his pleading supports a finding of a persistent and widespread practice (Opp'n. Br. at 28), a failure by Lauro to take action despite knowledge of the practice (*id*. at 29-30), and the tacit admission of a policy by Bryant (*id*. at 30-31). None of these arguments succeed. As to the first theory, Plaintiff relies on the claim that Bryant warned him against filling out a workers'

compensation claim and that Plaintiff was aware of at least[10] two others against whom Bryant

"retaliated" until they quit. (*Id*. at 28-29; SAC ¶¶ 46-48). This argument fails because filing a

workers' compensation claim is not a protected activity, (*see* discussion *supra*), and simply naming

three people does not—without more—constitute a widespread policy, *see Smith v. Westchester

Cty.*, No. 19-CV-1283, 2019 WL 5816120, at *5 (S.D.N.Y. Nov. 7, 2019) (dismissing *Monell*

claim where plaintiff "describe[d] only his own experiences" and "fail[ed] to provide any factual

details" regarding others' experiences); *Oriental v. Vill. Of Westbury*, No. 18-CV-3878, 2019 WL

4861413, at *4 (E.D.N.Y. Oct. 2, 2019) (dismissing *Monell* claim where "the complaint contains

only a detailed account of plaintiffs' own experiences"). As to the third[11] argument, Plaintiff insists

that Bryant tacitly acknowledged an official policy "of ignoring discrimination and threats against

employees" when Bryant warned him against filing a complaint. (Opp'n. Br. at 30). In full, the

cited allegation reads:

> On or about March 18, 2016, Defendant BRYANT continued to
> intimidate Plaintiff DIPINTO by stopping Plaintiff on his way to a
> meeting with COUNTY's employee TOM CASH. When Defendant
> BRYANT stopped Plaintiff DIPINTO, he threatened, "**DON'T
> MAKE A BIG DEAL ABOUT THIS. IF YOU FILE A
> COMPLAINT YOUR JOB WILL BE IN JEOPARDY**," and
> "**REMEMBER YOU'RE STILL ON PROBATION, THE
> COUNTY LOOKS DOWN ON THINGS LIKE THIS**."

(SAC ¶ 67 (bold and capitalization in original)). Whatever this statement may establish with

respect to a policy concerning individuals who *complain* about discrimination, Plaintiff concedes

that he never complained about discrimination. (Opp'n. Br. at 29). Accordingly, the import of any

---

[10] The SAC reads "previous operators named Rich, Mike Webber, and several others." (SAC ¶ 48). Plaintiff's
opposition brief records it as "Rich, Mike, Webber, and several others." (Opp'n. Br. at 28).

[11] Insofar as Plaintiff seeks to establish the existence of a policy based on Lauro's action or inaction, see discussion
*supra* at n.1.

policy embodied therein has no bearing on his claim concerning discrimination stemming from "the basis of protected activity, disability and/or perceived disability." (SAC ¶ 168).

As Plaintiff failed to plead the existence of a municipal policy that violated his right to equal protection, the *Monell* claim is dismissed.

IX.    Bryant Is Not Entitled to Qualified Immunity at this Stage

The final argument for consideration is Defendants' argument that Bryant is entitled to the yet-to-be pled defense of qualified immunity. (*See* Def. Br. at 20-21; Reply Br. at 8-9). "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). If an official's belief that his action does not violate clearly established law is "objectively reasonable," he is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013); *see also al-Kidd*, 563 U.S. at 743 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments . . . .[I]t protects all but the plainly incompetent or those who knowingly violate the law." (internal quotation marks omitted)). However, on a motion to dismiss, Plaintiff's entitlement to qualified immunity must "appear on the face of the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (internal quotation marks omitted). That is not the case here.

Defendants argue that "[t]he actions taken by Defendant Bryant, specifically the decision to terminate Plaintiff due to unsatisfactory job performance, were objectively reasonable within the purview of his statutory duties." (Def. Br. at 20-21). This argument is little different from the argument advanced in support of dismissing the FAC (*compare* Def. Br. at 20-21, *with* Doc. 54 at 7-8 and Doc. 56 at 5), which Judge Karas concluded, "merely restate[d] the qualified immunity caselaw without meaningfully applying it to the facts of this case" (Prior Ord. at 7 n.4). What's more, to accept Defendants' argument would mean disregarding Plaintiff's allegations, looking beyond the SAC, and accepting Defendants' version of events as true. That, this Court will not do. *See Serrata v. Givens*, No. 18-CV-2016, 2019 WL 1597297, at *5 (E.D.N.Y. Apr. 15, 2019) (noting that defendants' qualified immunity arguments "were all predicated on the court's acceptance, and crediting, of materials outside the pleadings"); *Pollack v. Holanchock*, No. 10-CV-2402, 2011 WL 4867558, at *5 (S.D.N.Y. Oct. 13, 2011) (rejecting defendants' qualified immunity argument on a motion to dismiss because it concerned issues of fact). Although Bryant is "not entitled to qualified immunity on the face of the complaint . . . a factual basis for qualified immunity may arise as the proceedings develop." *Terranova v. New York*, 144 F. App'x 143, 146-47 (2d Cir. 2005) (internal quotation marks omitted). Defendants may revisit this argument after developing the record. The Court simply cannot conclude from the four-corners of the SAC that Bryant is entitled to qualified immunity at this early pleading stage.

## CONCLUSION

Based upon the foregoing, Defendants' motion to dismiss the SAC is GRANTED in part. Plaintiff's claims against Lauro, the NYSHRL claims against the County and Bryant in his official capacity (Claims 4-7), the NYSHRL retaliation claim against Bryant in his individual capacity (Claim 5), and the *Monell* claim (Claims 8-9) are DISMISSED. Plaintiff's ADA discrimination

(Claim 1), retaliation (Claim 2), and hostile work environment (Claim 3) claims against the County, and his NYSHRL discrimination (Claim 4), hostile work environment (Claim 6), and aiding and abetting (Claim 7) claims against Bryant in his individual capacity, shall proceed to discovery. The Court will issue an Initial Pretrial Conference Order and set a conference date in short order.

The Clerk of Court is respectfully directed to terminate the pending motion sequence (Doc. 75) and terminate Defendant Thomas Lauro from this action.

**SO ORDERED:**

Dated:    New York, New York
          October 19, 2020

_____
PHILIP M. HALPERN
United States District Judge