UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILLIP DIPINTO,

                            Plaintiff,

            -against-

WESTCHESTER COUNTY, et al.,

                            Defendants.

**<u>OPINION AND ORDER</u>**

18-CV-00793 (PMH)

PHILIP M. HALPERN, United States District Judge:

Phillip Dipinto ("Plaintiff") initiated this action on January 29, 2018 (Doc. 2), filed his First Amended Complaint with the Court's leave on July 7, 2018 (Doc. 21), and, following Judge Karas's August 29, 2019 Opinion & Order (Doc. 60),[1] filed his Second Amended Complaint on September 17, 2019 (Doc. 61, "SAC"). Plaintiff, in the Second Amended Complaint, pressed nine claims for relief against Westchester County (the "County" or "Defendant"), Thomas Lauro ("Lauro"), and Jeffrey Bryant ("Bryant"): (1) discrimination, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, against the County; (2) ADA retaliation against the County; (3) ADA hostile work environment against the County; (4) discrimination, in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296 *et seq.*, against all defendants; (5) NYSHRL retaliation against all defendants; (6) NYSHRL hostile work environment against all defendants; (7) NYSHRL aiding and abetting against all defendants; (8) discrimination and due process under 42 U.S.C. § 1983 against all defendants; and (9) hostile work environment under 42 U.S.C. § 1983 against all defendants.

---

[1] This decision is also available on commercial databases. *See Dipinto v. Westchester Cty.*, No. 18-CV-00793, 2019 WL 4142493 (S.D.N.Y. Aug. 30, 2019).

This Court, in an October 19, 2020 Memorandum Opinion & Order, *inter alia*, dismissed Lauro as a defendant in the action; dismissed the NYSHRL claims against the County and Bryant in his official capacity; dismissed the *Monell* claims; and permitted Plaintiff's claims against the County of ADA discrimination (Claim 1), ADA retaliation (Claim 2), and ADA hostile work environment (Claim 3), and his claims against Bryant in his individual capacity of NYSHRL discrimination (Claim 4), NYSHRL hostile work environment (Claim 6), and NYSHRL aiding and abetting (Claim 7) to proceed to discovery.[2] The County and Bryant filed an Answer to the Complaint on November 12, 2020. (Doc. 90, "Ans.").

Discovery was completed on August 16, 2021. (*See* June 23, 2021 Min. Entry). On August 24, 2021, Plaintiff advised the Court that he sought to discontinue his claims pressed under state law. (Doc. 102). The Court, accordingly, issued an Order on August 25, 2021 dismissing the remaining state law claims (Claims 4, 6, and 7) alleged in the Second Amended Complaint. (Doc. 103). In light of the dismissal of those claims, the Court granted the County's unopposed request to terminate Bryant as a defendant individually and in his official capacity, and removed him from the caption of this action. (Doc. 110). Thus, the only outstanding claims in the Second Amended Complaint are Plaintiff's claims under the ADA against the County alleging discrimination (Claim 1), retaliation (Claim 2), and hostile work environment (Claim 3).

Defendant, in accordance with the briefing schedule set by the Court, moved for summary judgment dismissing those remaining claims. (Doc. 129; Doc. 130, "Peart Decl."; Doc. 131, "Def. Br."). Plaintiff opposed (Doc. 132, "Opp. Br."; Doc. 132-1, "Allen Decl."), and the motion was

---

[2] This decision is also available on commercial databases. *See Dipinto v. Westchester Cty.*, No. 18-CV-00793, 2020 WL 6135902 (S.D.N.Y. Oct. 19, 2020).

fully submitted with the filing of Defendant's reply papers in further support of the motion on April 22, 2022 (Doc. 133, "Reply Br."; Doc. 134, "Peart Reply Decl.").

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendant's Rule 56.1 Statement and Plaintiff's responses thereto (Doc. 121-1, "56.1"), and the admissible evidence proffered by the parties. Unless otherwise indicated, the facts cited herein are undisputed.

Plaintiff was initially hired by Defendant as a temporary employee at the Yonkers Joint Wastewater Treatment Plant (the "Plant") on October 20, 2014. (SAC ¶¶ 21, 34; Ans. ¶¶ 21, 34). Defendant then offered Plaintiff a "contingent probationary appointment" to the position of Wastewater Treatment Plant Operator, effective September 14, 2015. (Peart Decl., Ex. 13; SAC ¶ 35; Ans. ¶ 35). Plaintiff, as a probationary employee, was required to complete a probationary period of no less than twelve and no more than 52 weeks to qualify as a full-time employee of the County. (Peart Decl., Ex. 13; SAC ¶ 36; Ans. ¶ 36). Plaintiff's role as an operator mainly involved monitoring pumps, taking samples, and general monitoring of the Plant. (Peart Decl., Ex. 4, "DiPinto Tr." at 20:3-23). The operators, including Plaintiff, rotated the shifts that they worked on a weekly basis. (*Id*. at 82:1-5; 86:14-24, 35, 59, 60). The rotation included assignments in "Primary," "Secondary," "Building," and "Samples." (56.1 ¶ 21; DiPinto Tr. at 85). At times, the position had physical demands that involved extensive walking and heavy lifting. (DiPinto Tr. at 21-22). For instance, it was a quarter mile distance to walk from one plant to the other and required carrying "samples," which were stored in 5-gallon jugs. (*Id*.). Plaintiff's initial supervisors were Keith May, Ben Rogers, and Andrew Wozniak. (SAC ¶ 37; Ans. ¶ 37). Plaintiff's supervisor from April 2016 until his termination in August 2016 was Dave Scarlato ("Scarlato"). (Allen Decl., Ex.

1, "DiPinto Decl."). Plaintiff also reported to Bryant, the Plant Superintendent, and received assignments from him. (SAC ¶ 26; Ans. ¶ 26; 56.1 ¶ 4).

On or about February 5, 2016, Plaintiff suffered a workplace injury to both feet when a 6-foot, 100+ pound angle iron rod fell across his feet. (56.1 ¶¶ 5, 10-11; Peart Decl., Ex. 3). Plaintiff filed an incident report immediately following the accident but declined to go to the hospital and instead continued to work the remainder of his scheduled 12-hour shift. (56.1 ¶¶ 11-12). Plaintiff did not request or take any time off for his foot injury for the remainder of his employment at the Plant. (*Id*. ¶ 12). The day after the accident, Plaintiff was not scheduled to work. (*Id*. ¶ 13). He then took a previously scheduled two-week family vacation to Colorado. (*Id*.).

By letter dated March 13, 2016, Plaintiff requested to be transferred to a different plant. (*Id*. ¶ 17). Plaintiff stated in the letter that he sought the transfer to further his professional development, citing "[r]ecent discussions about my character have led me to believe that this feeling is not based on a performance issue but rather a personal issue." (Peart Decl., Ex. 5). Plaintiff did not, in that letter, complain of discrimination as a result of his alleged disability or a hostile work environment. (*Id*.).

Scarlato completed, and Plaintiff signed, a performance evaluation on August 14, 2016. (Peart Decl., Ex. 8). The overall rating indicated that Plaintiff's "Performance Requires Improvement." (*Id*. at 1). Plaintiff received a score of two ("Needs Improvement") in five of the fourteen categories; a score of three ("Fully Meets Expectations") in six of the fourteen categories; and a score of four ("Exceeds Expectations") in three of the fourteen categories. (*See generally, id*.). Bryant, after reviewing the performance evaluation, recommended that Plaintiff's probation not be approved such that Plaintiff would not be appointed to a permanent position. (Peart Decl.,

Ex. 6, "Bryant Tr." at 21:3-11, 100:6-11). Plaintiff was terminated on or about August 23, 2016 for unsatisfactory job performance, effective August 30, 2016. (Peart Decl., Ex. 2).

Plaintiff first sought medical attention for his February 5, 2016 workplace injury in November 2016, nearly nine months after the accident and three months after his termination. (56.1 ¶ 14). On December 7, 2017, Dr. Samuel A. Hoisington examined Plaintiff for a "schedule loss of use" and completed a report. (Allen Decl., Ex. 2). The report indicates that Plaintiff has a 20% loss of use of the right foot and ankle and that it is a permanent impairment. (*Id*.). Plaintiff's condition, plantar fasciitis, manifested because Plaintiff did not seek medical attention immediately following the workplace accident. (56.1 ¶ 15).

Defendant now moves for summary judgment dismissing the Second Amended Complaint.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or

weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that

summary judgment is appropriate only when . . . law supports the moving party”); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when “the law so favors the moving party that entry of judgment in favor of the movant . . . is proper”).

## ANALYSIS

I.   ADA Discrimination (Claim 1)

Plaintiff’s first claim for relief alleges that Defendant discriminated against him in violation of the ADA and failed to make any attempt to accommodate his disability. Defendant argues, *inter alia*, that this claim cannot survive summary judgment because there is no evidence that Plaintiff was disabled or perceived as disabled within the meaning of the ADA. As set forth below, the Court agrees and concludes that, even construing the evidence most favorably to Plaintiff, no rational jury could find that Plaintiff was disabled or perceived as disabled for purposes of this claim and that Defendant is therefore entitled to judgment as a matter of law.

The three-part burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (“*McDonnell-Douglas*”) is used to analyze discrimination claims under the ADA. *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, No. 20-03718, 2022 WL 1715977, at *2 (2d Cir. May 27, 2022). The plaintiff must first, under that framework, establish a *prima facie* case of employment discrimination based on a disability before the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the challenged actions. *Id.*; *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) (“Under that framework, a plaintiff must first establish a prima facie case of discrimination, which causes the burden of production to shift to the defendant to offer a legitimate, nondiscriminatory rationale for its actions.”).

A *prima facie* case of disability discrimination requires a plaintiff to establish that: (1) "his employer is subject to the ADA;" (2) "he is disabled within the meaning of the ADA or perceived to be so by his employer;" (3) "he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation;" and (4) "he suffered an adverse employment action because of his disability." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008). With respect to a failure to accommodate claim, a plaintiff must show that: (1) he "is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (quoting *Graves v. Finch Pruyn & Co., Inc.,* 457 F.3d 181, 184 (2d Cir. 2006)).

The ADA Amendment Act of 2008 ("ADAAA"), effective January 1, 2009, defines "disability" as (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[P]ost-ADAAA, major life activities include, but are not limited to, 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" *Graham v. Three Vill. Cent. Sch. Dist.*, No. 11-CV-05182, 2013 WL 5445736, at *11 (E.D.N.Y. Sept. 30, 2013) (Bianco, J.) (quoting 42 U.S.C. § 12102(2)).

Plaintiff proceeds under the theories of "actual disability" and "regarded as" having a disability.[3] The Court considers each in turn.

---

[3] Plaintiff does not proceed under the "record of such impairment" prong of the ADA.

A. <u>Actual Disability</u>

"For purposes of determining whether an ADA plaintiff is a 'qualified individual with a disability,' 42 U.S.C. § 12131(2), the ADA defines 'disability' to include, *inter alia*, 'a physical or mental impairment that substantially limits one or more major life activities.'" *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92 (2d Cir. 2021) (quoting *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020)). Plaintiff's claimed impairment is his foot injury which occurred as a result of the workplace accident on February 5, 2016, and he argues that the activities impaired are working, walking, driving, standing, lifting, exercising, and playing with his son. (Opp. Br. at 12, 18).[4] Although the parties do not dispute that Plaintiff may *presently* suffer from a disability (Reply at 5), the Court must first address the "threshold issue" of whether Plaintiff was disabled *in the relevant time period*. *Miller v. McHugh*, 814 F. Supp. 2d 299, 316 (S.D.N.Y. 2011). Courts have routinely held that evidence concerning the plaintiff's alleged disability which postdates the relevant time period is immaterial to demonstrating a disability. *See, e.g., Quintero v. Rite Aid of New York, Inc.*, No.

---

[4] It is worth noting that Plaintiff testified at his deposition that: "Walking, you know, I can -- I can walk. . . . Driving, I can -- I can drive . . . . [The impairment] affects playing with my son . . . [I] can't really play soccer with him. Not that he even really likes soccer, but you know what I mean." (DiPinto Tr. at 60). Many of the allegations in Plaintiff's opposition brief and declaration concerning Plaintiff's limitations thus flatly contradict his deposition testimony. (*See* Opp. Br. at 12, 18; DiPinto Decl. ¶¶ 16, 73, 80). Even where there is not a direct contradiction between prior deposition testimony and new allegations in a subsequent affirmation, on a motion for summary judgment the Court is not required to accept the new allegations as "genuine" issues for trial. *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."); *Petrisch v. HSBC Bank USA, Inc.*, No. 07-CV-03303, 2013 WL 1316712, at *10-11 (E.D.N.Y. Mar. 28, 2013) (declining to consider new facts in opposition to summary judgment motion where plaintiff "had the opportunity to testify about the new allegations during her depositions" because "[p]ermitting plaintiff to add speculative and conclusory allegations to bolster her claims after defendants have moved for summary judgment without permitting defendants to conduct discovery on those new allegations would make plaintiff's case a moving target" and the defendants had been "denied the opportunity to ask follow-up questions and obtain more specific information."); *Heletsi v. Lufthansa German Airlines, Inc.*, No. 99-CV-04739, 2001 WL 1646518, at *1 n.1 (E.D.N.Y. Dec. 18, 2001) ("A party cannot amend their complaint simply by alleging new facts and theories in their memoranda opposing summary judgment."); *see also Patterson v. Patterson*, No. 20-CV-02552, 2022 WL 356513, at *6 (S.D.N.Y. Feb. 7, 2022); *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 520 (S.D.N.Y. 2015).

09-CV-06084, 2011 WL 5529818, at *14 (S.D.N.Y. Nov. 10, 2011) (A physician's report, "which offer[ed] only psychological diagnoses from outside the relevant time period," was insufficient to demonstrate plaintiff was disabled within the meaning of the ADA); *see also Adams v. Crestwood Med. Ctr.*, 504 F. Supp. 3d 1263, 1287 (N.D. Ala. 2020) (same and collecting cases).

The medical evidence of Plaintiff's alleged disability found in this record is the December 7, 2017 report of Dr. Hoisington's examination of Plaintiff. (Allen Decl., Ex. 2). It was not until this report, prepared more than one year after Plaintiff's termination, that Plaintiff was told he had a "permanent impairment." (*Id*.). The record is devoid of any medical evidence concerning Plaintiff's alleged disability in the relevant time period—indeed, Plaintiff concedes that he did not seek any medical attention for his workplace injury until, at the earliest, November 2016, which was nearly nine months after the accident and three months after his termination. (56.1 ¶ 14). For this reason alone, Plaintiff has failed to establish a disability within the relevant time period.

Moreover, this medical evidence does not detail Plaintiff's required accommodations or limitations, except to recite Plaintiff's self-reported limitations as of that date and conclude that Plaintiff, as of December 7, 2017, suffers from a permanent impairment. (Allen Decl., Ex. 2 at 3) ("The patient tells me that his activity is still limited. The patient is unable to run. He is unable to do squats. The patient does experience pain going up and down stairs."). However, "[a] diagnosis alone is insufficient to establish disability under the statute." *Ibela v. Allied Universal*, No. 21-01995-CV, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022); *see also Peterec-Tolino v. Com. Elec. Contractors, Inc.*, No. 08-CV-00891, 2011 WL 5105474, at *6 (S.D.N.Y. Oct. 26, 2011) (the plaintiff's failure to offer any medical evidence substantiating claimed limitations undermines finding of disability under the ADA); *Villanti v. Cold Spring Harbor Cent. Sch. Dist.*, 733 F. Supp. 2d 371, 380 (E.D.N.Y. 2010) (concluding that doctor's letter which provided "virtually no

information" "with respect to lifting, carrying, and exercising" was insufficient to show a substantial limitation of the ability to work); *see also Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir. 1994) (concluding that plaintiff failed to establish disability where, *inter alia*, she offered "[n]o medical proof" substantiating her alleged limitations).

Plaintiff's testimony likewise does not establish an ADA-qualifying disability. *See Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 88 (2d Cir. 2010). Plaintiff testified that during the relevant time period, his limitations were that he "couldn't work out how [he] wanted to," meaning heavy squats and deadlifts of more than 50 pounds; that he experienced pain while driving, walking long distances, and running; and that he had a limp following the workplace accident. (DiPinto Tr. at 40, 60-61). Plaintiff's testimony is insufficient to establish that Plaintiff suffered from a disability under the ADA during the relevant time period. *See Cady v. Bolivar-Richburg Cent. Sch. Dist.*, No. 12-CV-01121, 2016 WL 8291111, at *7 (W.D.N.Y. Nov. 28, 2016) (holding, on motion for summary judgment, that the plaintiff failed to provide sufficient evidence that her lumbar disc herniation, which caused a "moderate limitation in her ability to walk," was a disability for purposes of the ADA), *adopted by* 2017 WL 713715 (W.D.N.Y. Feb. 21, 2017); *Graham*, 2013 WL 5445736, at *18 ("The fact that an individual has a visible limp or type of walking impairment does not *per se* establish an ADA-qualifying disability."); *see also Kelly v. Drexel Univ.*, 94 F.3d 102, 106 (3d Cir. 1996) (evidence that plaintiff with severe post-traumatic hip impairment, who was unable to walk more than a mile, could not jog, and who had to use a hand rail to ascend stairs, did not establish ADA-qualifying disability); *Penny v. United Parcel Serv.*, 128 F.3d 408, 416 (6th Cir. 1997) (difficulty walking not an ADA-disability). Because Plaintiff has not shown that his injury rose to the level of a "physical impairment that substantially [restricted him] from performing [day-to-day, essential tasks]" during the relevant time period as

required by the first prong of a *prima facie* case for disability discrimination, *Norman v. NYU Langone Health Sys.*, 492 F. Supp. 3d 154, 163 (S.D.N.Y. 2020), *aff'd*, No. 20-03624-CV, 2021 WL 5986999 (2d Cir. Dec. 17, 2021), the Court need not evaluate whether he has satisfied the remaining elements of this claim under his theory of actual disability.

    B.  <u>"Perceived Disability"</u>

Plaintiff also proceeds alternatively on the "perceived disability" theory. As an initial matter, the ADAAA now makes clear that no failure to accommodate claim can be made, as a matter of law, for an individual who was "regarded as" disabled, as opposed to one who was actually disabled. *Graham*, 2013 WL 5445736, at *11. A "regarded as" theory of disability is therefore not actionable in the context of a failure to accommodate claim. *Id.*; *see* 42 U.S.C. § 12201(h) ("A covered entity under subchapter I, a public entity under subchapter II, and any person who owns, leases (or leases to), or operates a place of public accommodation under subchapter III, need not provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C) of this title solely under subparagraph (C) of such section."); *see also Powers v. USF Holland, Inc.,* 667 F.3d 815, 823 n. 7 (7th Cir. 2011) ("[T]he ADAAA clarified that an individual 'regarded as' disabled (as opposed to actually disabled) is not entitled to a 'reasonable accommodation." (quoting 42 U.S.C. § 12201(h))).

Thus, Plaintiff's failure to accommodate claim based on his perceived disability fails as a matter of law. Unlike a failure to accommodate claim, however, a discriminatory discharge claim may be based upon a theory of perceived disability. To succeed on such claim, the plaintiff must establish "that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is

perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). A "plaintiff need only establish that [the] defendant regarded him [or her] as having a mental or physical impairment and is 'not required to present evidence of how or to what degree [defendant] believed the impairment affected him [or her].'" *Terpening v. McGinty*, No. 21-CV-01215, 2022 WL 17418268, at *10 (N.D.N.Y. Oct. 5, 2022) (quoting *Rodriguez v. Verizon Telecom*, No. 13-CV-06969, 2014 WL 6807834, at *5 (S.D.N.Y. Dec. 3, 2014)), *adopted by* 2022 WL 17415121 (N.D.N.Y. Dec. 5, 2022).

Plaintiff fails to demonstrate a genuine issue of material fact as to whether Defendant regarded Plaintiff as disabled. Plaintiff's sole assertion for his claim that the County perceived him as disabled is that Bryant made disparaging comments to Plaintiff such as, "Oh, how's your foot doing? Oh, you're quick. You're walking pretty good today. Do you need a cane today? Should I get you a wheelchair?" (Opp. Br. at 17-18; DiPinto Tr. 74:13-75:6). Plaintiff's testimony does not specify when such comments were made to him, other than to say they were made after his injury and "[e]very single time I would see [Bryant]." (DiPinto Tr. at 74:19-75:4). Plaintiff also, in support of his "regarded as" theory of discrimination, cites to the following portions of his declaration, alleging that: (1) immediately after the workplace injury on February 5, 2016, he limped to Bryant's office where Bryant inspected the injury and stated "if you are too injured to work, maybe you are not cut out to work here" and "don't fill out a worker's compensation claim! If you do, your employment will be in jeopardy"; (2) upon Plaintiff's return to work following the workplace injury and his vacation, Bryant subjected him "to excessive scrutiny because of [his] physical disability, along with making disparaging comments about [his] disability"; (3) Bryant thereafter "harassed and taunted" Plaintiff about his limp; and (4) on March 2, 2016, Bryant told Plaintiff in the context of a discussion about his disability that he "was one of the worst operators here." (Opp. Br. at 18; DiPinto Decl. ¶¶ 18-21, 27, 28, 29).

13

Courts in this Circuit, when determining whether a remark is probative of discriminatory intent, have considered four factors: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Martinez v. New York City Transit Auth.*, 672 F. App'x 68, 71 (2d Cir. 2016) (quoting *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)). Stray remarks alone are insufficient to defeat summary judgment, even when derogatory, where the commenter does not have ultimate authority to hire or fire an employee. *See Stephan v. W. Irondequoit Cent. Sch. Dist.*, 450 F. App'x 77, 80 (2d Cir. 2011) (citation omitted) (holding that a supervisor referring to a plaintiff using derogatory names such as "retard," "Special Edna," and "Crystal Meth," was insufficient to establish that the plaintiff's employer regarded the plaintiff as disabled because the supervisor lacked ultimate authority over hiring and firing the plaintiff).

Bryant's deposition testimony and sworn affidavit indicate that he was not a final decisionmaker as he did not have the authority to terminate probationary employees, though he did recommend that Plaintiff's probation not be approved such that Plaintiff would not be appointed to a permanent position. (Peart Reply Decl., Ex. 2 ¶ 26; Bryant Tr. at 21:3-11). Even if he could be considered a decision-maker, the sole record evidence proffered by Plaintiff—Bryant's comments to Plaintiff—were made outside the context of the decision-making process in relation to Plaintiff's termination. This evidence is insufficient to show that the County, Plaintiff's employer, engaged in "regarded as" discrimination. Even if a reasonable juror might view Bryant's remarks as evidence that he perceived Plaintiff as disabled, the stray comments are insufficient to establish that Defendant regarded plaintiff as disabled and terminated him on that basis. *See*

*Stolpner v. New York Univ. Lutheran Med. Ctr.*, No. 16-CV-00997, 2018 WL 4697279, at *23 (E.D.N.Y. Sept. 29, 2018) (holding that supervisor's "limited comments to coworkers, outside the context of the decision-making process, are insufficient to show that the plaintiff's employer, LMC, engaged in 'regarded as' discrimination."); *see also Davis v. Bombardier Transp. Holdings (USA) Inc.*, No. 11-CV-00782, 2013 WL 6816605, at *10 (E.D.N.Y. Dec. 24, 2013) (noting "stray comments cannot form the basis for plaintiff's discrimination claim" where plaintiff claimed that after returning from disability leave she was told by one supervisor she would not be promoted due to her disability and another "when you are out, you are out"), *aff'd* 794 F.3d 266 (2d Cir. 2015); *Monte v. Ernst & Young LLP*, 330 F. Supp. 2d 350, 363 (S.D.N.Y. 2004) (granting summary judgment in favor of employer and holding that "Plaintiff's evidence of stray comments and Scharks' [personal] biases would be insufficient, without more, to demonstrate that discrimination was a determinative factor in the decision."), *aff'd*, 148 F. App'x 43 (2d Cir. 2005).

Moreover, to the extent Plaintiff argues that Bryant told Scarlato to give Plaintiff a negative review to support a "cat's paw" theory of liability, Plaintiff cites no evidence beyond his testimony for this assertion, which relies solely only on inadmissible hearsay and his own speculation. (DiPinto Tr. at 105:12-14 ("Ben Rogers told me that Dave Scarlato was told by Jeff [Bryant] -- Dave Scarlato told Ben Rogers that Jeff told him to give me a bad review.")). This theory therefore fails as well. *Stolpner*, 2018 WL 4697279, at *24. Plaintiff simply has not offered evidence sufficient to establish a genuine issue of material fact that Defendant discriminated against him on the basis of a perceived disability.

In sum, although the allegations in the Second Amended Complaint, taken as true, may have been enough to "give plausible support to a minimal inference" of discrimination on the prior motions to dismiss, the evidence in the record, even construed in Plaintiff's favor, is not enough

for him to establish a *prima facie* case of discrimination at summary judgment, let alone to establish that Defendant actually discriminated against him on the basis of his disability. *See Dooley v. JetBlue Airways Corp.*, No. 14-CV-04432, 2017 WL 3738721, at *6 (S.D.N.Y. Aug. 29, 2017), *aff'd*, 751 F. App'x 52 (2d Cir. 2018). Accordingly, Defendant is entitled to summary judgment dismissing Plaintiff's first claim for relief.

II.   ADA Retaliation (Claim 2):

ADA retaliation claims are also evaluated under the *McDonnell Douglas* burden-shifting framework established for Title VII cases. *Norman*, 2021 WL 5986999, at *5. If the plaintiff establishes a *prima facie case*, the defendant must articulate a legitimate, non-retaliatory reason for its action, and the plaintiff then must show that the offered justification is pretext for retaliation. *Servello v. New York State Off. of Child. & Fam. Servs.*, No. 21-02541, 2022 WL 17411287, at *1 (2d Cir. Dec. 5, 2022). The elements of a *prima facie* retaliation claim under the ADA are: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (internal quotation marks omitted).

Plaintiff's opposition brief contends that Defendant retaliated against him in violation of the ADA by taking Plaintiff out of rotation and assigning him to work indefinitely at Samples, the most difficult and physically demanding shift, and terminating Plaintiff's employment, "in close temporal proximity to Plaintiff's requests for accommodations and request to transfer away from Bryant." (Opp. Br. at 25).

A. Protected Activity

Plaintiff contends that his March 13, 2016 letter requesting a transfer to a different plant and his verbal requests for accommodations constituted protected activity. (*Id.*).

The Court previously determined that Plaintiff's letter request to transfer was not protected activity for purposes of this claim. *Dipinto*, 2019 WL 4142493, at *10. Although Plaintiff repleaded identical allegations in his Second Amended Complaint following dismissal of the prior pleading's retaliation claim, when the Second Amended Complaint was challenged on the next motion to dismiss, he abandoned the letter as a form of protected activity. *Dipinto*, 2020 WL 6135902, at *7. Plaintiff's attempt to revive this theory via opposition brief is rejected as an impermissible attempt to assert a theory previously dismissed and later abandoned. In any event, this theory falls flat for the same reasons the Court dismissed it the first time: Plaintiff's March 13, 2016 letter "uses only vague and general language relating to the fulfillment of his own professional goals; nowhere does he name Bryant (or anyone else), mention the injury to his feet, describe any disability-based harassment or discrimination, or otherwise indicate that the transfer request is based on a protected status." *Dipinto*, 2019 WL 4142493, at *10 (citing *Martel v. New Eng. Home Care, Inc.*, No. 09-CV-1412, 2014 WL 3687738, at *14 (D. Conn. July 22, 2014) and *Kendricks v. Westhab, Inc.*, 163 F. Supp. 2d 263, 271 (S.D.N.Y. 2001), *aff'd*, 40 F. App'x 619 (2d Cir. 2002)). Accordingly, the only protected activity that could form the basis of a retaliation claim are Plaintiff's requests for a reasonable accommodation.

Plaintiff testified that he made a verbal request to accommodate him with a job that required less walking to one of his supervisors—either Ben Rogers, Andrew Wozniak, or Scarlato, but not Bryant or Lauro. (DiPinto Tr. at 94:20-95:23). Although Plaintiff testified that he was unsure when he made that request, at some point thereafter he was permanently assigned to Samples and taken

17

out of the standard rotation. (*Id*. at 95:15-23, 111:19-112:3; *see also* DiPinto Decl. ¶ 42 (asserting that the requests for tasks with less walking were made to Scarlato in April 2016), ¶ 45 (asserting that on May 2, 2016, Scarlato advised Plaintiff that Bryant directed him to only give Plaintiff work in Samples)). Plaintiff, in response, "didn't necessarily complain. I asked why. How come -- how come I'm on samples now?" (DiPinto Tr. at 112:21-113:17). Plaintiff testified that he thereafter made verbal accommodation requests to Scarlato to not work Samples, but never received any response and was not taken off Samples and put back in the standard rotation. (DiPinto Tr. 117:8-119:4).

The Court is not persuaded that Plaintiff's request for a job with less walking and/or to be taken off Samples is a clear-cut protected activity of which the County was aware. *Graham*, 2013 WL 5445736, at *22 (citing *Cook v. CBS, Inc.*, 47 F. App'x 594, 596 (2d Cir. 2002) (concluding that plaintiff did not engage in protected activity where plaintiff sent a letter "request[ing] additional training and reassignment without ever mentioning, or even alluding to, [plaintiff's] belief that [defendant's] failure to comply with his requests would constitute unlawful discrimination"); and *Foster v. Humane Soc. of Rochester & Monroe Cnty., Inc.*, 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) (concluding that plaintiff's allegations and supporting documents did not show that plaintiff engaged in protected activity, but instead showed "that while [plaintiff] did complain about certain problems she was having at work, she did not complain that she was being discriminated against")). However, assuming Plaintiff has satisfied the first element of a *prima facie* retaliation claim under the ADA, his claim still fails for the reasons set forth *infra*.

B. <u>Adverse Employment Action</u>

The adverse employment actions Plaintiff contends he suffered were being disproportionately assigned to Samples and being terminated. There is no dispute that Plaintiff was

terminated, which is an adverse action sufficient to satisfy this prong of a *prima facie* case of retaliation. *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (termination of employment is adverse action). Thus, assuming Plaintiff's testimony establishes he made a request for an accommodation, regardless of whether he was or was not disproportionately assigned to Samples, Plaintiff's termination is sufficient to satisfy the adverse employment prong of his retaliation claim.[5]

### C.  Causal Connection

Plaintiff relies upon temporal proximity alone to establish a causal connection between the requests for accommodation and termination. (Opp. Br. at 24-25 ("As Plaintiff has plausibly pled that he sought a reasonable accommodation under the ADA, which was followed in close temporal proximity by the adverse actions to which Defendant Bryant subjected him to, he has thus pled a protected activity for his ADA retaliation claim."). Crediting Plaintiff's declaration—in light of his inability to recall these facts at his deposition—the latest date he requested an accommodation of less walking and/or being taken off Samples was in May of 2016. (DiPinto Decl. ¶¶ 54-58). Plaintiff's negative performance review was completed on August 14, 2016 and his termination was communicated to him on August 23, 2016. The passage of three months between the last instance of protected activity and the adverse action may be too attenuated to support an inference

---

[5] The parties dispute whether Plaintiff was disproportionately assigned to Samples. Defendant produced log books demonstrating that Plaintiff was not disproportionately assigned to Samples: from approximately the date of his workplace injury until his termination, Plaintiff worked a total of 40 shifts, eight of which were assignments to Samples. (Peart Decl., Ex. 7). As evidenced by Defendant's log books, the other operators who worked during this period were assigned to Samples three, four, six, fourteen, or seventeen times during the same six-month period. (*Id.*). Plaintiff, in the face of this documentary evidence, "wholeheartedly denies that the 'Log Books' produced by Defendants [sic] prove that Plaintiff was not disproportionately assigned to 'Samples' as Bryant and Scarlato would typically verbally assign Plaintiff to 'Samples,' despite the Log Book assignments." (Opp. Br. at 9). Although Plaintiff's counsel's unsworn challenge to Defendant's documentary evidence is insufficient to establish a genuine dispute of material fact, the Court need not resolve the dispute for purposes of this motion for the reasons discussed.

of causation. *See, Graham*, 2013 WL 5445736, at *23 (no causal connection can be inferred where last instance of alleged protected activity was four months before adverse action); *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (three and a half months between protected activity and termination without other evidence of causal nexus insufficient). Even assuming that Plaintiff can establish temporal proximity and can satisfy the elements of a *prima facie* retaliation case, the claim still cannot survive summary judgment because Plaintiff has no evidence from which a rational jury could find Defendant's legitimate, nondiscriminatory reason for his termination to be a pretext for retaliation.

D.  Legitimate Non-Discriminatory Reason and Pretext

Defendant has proffered a legitimate, non-discriminatory reason for Plaintiff's termination: Plaintiff's unsatisfactory work performance during his probationary employment.  (Peart Decl., Exs. 2, 8; Bryant Tr. at 100:6-11). *See Chukwurah v. Stop & Shop Supermarket Co. LLC*, 354 F. App'x 492, 495 (2d Cir. 2009) (plaintiff's poor performance constitutes legitimate, non-discriminatory reason for termination). The burden thus shifts to Plaintiff to "prove that his termination would not have occurred in the absence of a retaliatory motive." *Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-03625, 2013 WL 3968748, at *20 (E.D.N.Y. July 30, 2013). Plaintiff's only evidence of retaliation is the temporal proximity among his protected activity, negative performance review, and termination. "This is insufficient to establish that [his] employer was acting out of retaliatory motive." *Braunstein v. Sahara Plaza, LLC*, No. 21-2030, 2022 WL 17480962, at *3 (2d Cir. Dec. 7, 2022) (citing *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more,

such temporal proximity is insufficient to satisfy appellant's burden.")). Accordingly, Defendant is entitled to summary judgment dismissing Plaintiff's second claim for relief.

III.    ADA Hostile Work Environment (Claim 3):

Plaintiff's third claim for relief alleges that Defendant violated the ADA by subjecting him to a hostile work environment on account of his disability. "A plaintiff claiming hostile work environment based on disability must demonstrate that he is a member of the protected class. Which is to say, he must meet the definition of disability contained in the ADA." *Quintero*, 2011 WL 5529818, at *16 (alterations omitted) (quoting *Weiss v. Hustcdt Chevrolet*, No. 05-CV-04230, 2009 WL 2132444, at *8-9 (E.D.N.Y. July 13, 2009)). Because the Court has found that Plaintiff cannot establish that he was disabled under the ADA, his ADA hostile work environment claim also fails. *Id*.; *see also Ragusa*, 381 F. App'x at 88 n. 3 (plaintiff's failure to establish that she is a qualified individual with a disability defeats any hostile work environment claim based on such disability). Accordingly, Defendant is entitled to summary judgment dismissing Plaintiff's third claim for relief.

## **CONCLUSION**

For the foregoing reasons, the motion for summary judgment is GRANTED and Plaintiff's Second Amended Complaint is dismissed.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 129 and close this case.

**SO ORDERED:**

Dated:    White Plains, New York
          February 1, 2023

_____
PHILIP M. HALPERN
United States District Judge

21